IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRITISH TELECOMMUNICATIONS PLC, | ) |
| Plaintiff, | ) |
| v. | ) C. A. No.: 11-1249 (LPS) |
| GOOGLE INC., | ) |
| Defendant. | ) |

**PLAINTIFF BRITISH TELECOMMUNICATIONS PLC'S
COMMENTS ON GOOGLE INC.'S TECHNOLOGY TUTORIAL**

Pursuant to the Joint Scheduling Order (D.I. 26), Plaintiff British Telecommunications plc ("BT") respectfully submits these comments on the technology tutorial (D.I. 110) submitted by Defendant Google Inc. ("Google").

**i. U.S. Patent No. 6,151,309:** Google's Tutorial aligns with its Markman briefs, thematically, by focusing on very specific details from a single preferred embodiment, so as to create the misimpression that those details are essential to the invention. For example, slide 5[1] of Google's Tutorial construes the claim term "on a continuous point-by-point basis" as meaning "when the customer moves cell-to-cell in a network," even though the "cell-to-cell" movement relates to a preferred embodiment and does not appear in the claims.

Slide 10 of Google's Tutorial suggests that "software agents," a term defined more broadly in the Summary of the Invention (Col. 1, ll. 48-49), must contain all four of the components depicted in the preferred embodiment of Fig. 4. By excluding software agents with other architectures, Google implies that this embodiment defines the invention. Similarly, slides 13-17 focus on a particular embodiment that relies on a "capacity-price tuple," and fail to

---

[1] References to "slide _" herein refer to consecutive numbering of all slides in the hard copy of Google's tutorial.

01:13527293.1

recognize that capacity or price or bandwidth, as well as "other types" of data (Col. 10, ll. 33-34) are identified as alternate forms of data that may be used.

Slide 13 incorrectly implies that the customer must decide whether to continue service, and ignores the embodiment of Fig. 6 (Col. 10, ll. 1-29), in which the decision is automatic. Finally, in slide 15, the statement "the patent describes the generation of the capacity-price tuple as central to the system" is incorrect. In reality, the only thing that is called "central" at Col. 6, l. 27 is the <u>function</u> "continuously offer resources to the Customer Agent" – not the exemplary tuple <u>format</u> that was used in a preferred embodiment.

**ii. <u>U.S. Patent No 6,578,079</u>:** Google's Tutorial excludes embodiments that undermine Google's claim construction and correspond more closely to Google's infringing implementation. Most notably, Google's Tutorial excludes the embodiment wherein "information items" are cached (*i.e.*, stored locally at the node) prior to the user's requests for those items. *See, e.g.*, Col. 5, ll. 44-62 and BT's Opening Claim Construction Brief ("BT's Brief," D.I. 112) at 13-14. Accordingly, Google's Tutorial is inaccurate to the extent it suggests that the '079 Patent requires the retrieval of "information items" (or pages of information items) directly from a remote source in response to the user request. The information source from which the item is retrieved can be either the memory address of the cache or the ISP.

Google's Tutorial also presents the claimed "information items" as "documents in electronic form" which are something akin to a printed publication in electronic form. However, the '079 patent uses "information items" in a broader sense to embrace various types of files available over the Internet. *See* BT's Brief at 10-13.

Finally, by way of clarification of its own presentation, BT notes that Google's Tutorial is accurate in showing each remote content provider in Fig. 1 as the ISP 24. BT's Tutorial centered

the remote content providers due to space constraints, but did not mean to imply that they correspond to the SCP 14 elements of Fig. 1 at slide 41 of its tutorial. They do not.

**iii. U.S. Patent No 6,397,040**: Google's first mistake in relation to the '040 patent is to suggest that it is only directed to users carrying devices having limited bandwidth capabilities. This is not the case, and fixed terminals are also possible. The '040 patent also tracks the location of a user who moves between fixed terminals by looking at the IP address of the terminal at which the user logs on (Col. 12, ll. 22-23) and providing a shortlist that corresponds to the location associated with that IP address. The user does not have to carry the device (*see, e.g.*, dependent claim 35, separately claiming that feature) to obtain a list of web pages relevant to a location, although that is one common implementation.

Receipt of a shortlist at a terminal different from that which is tracked is entirely optional and claimed separately in dependent claim 25. The '040 patent contemplates receiving the shortlist at the same terminal that sends the tracking information (*e.g.*, a mobile phone on Google's Tutorial). *See* Col. 9, ll. 51-63. The '040 patent also allows transmitted information to be tailored to the capabilities of the terminal the user prefers. *See* Col. 9, ll. 44-50.

Citing a background passage that mobile communications "generally" have low bandwidth (Col. 1, l. 38), Google asserts, incorrectly, that mobile phones in the mid-1990's "did not provide a user with the ability to select information for viewing." In fact, mobile phones at the time allowed users to access the web directly on their mobile phones. For example, Nokia 9000[2] mobile phones actually used by BT in connection with the development of the technology described in the '040 Patent had this capability. The specification references and contemplates

---

[2] *See* Nokia Press Release of August 15, 1996, *available at* http://press.nokia.com/1996/08/15/first-gsm-based-communicator-product-hits-the-market-nokia-starts-sales-of-the-nokia-9000-communicator/ (last visited April 10, 2013).

01:13527293.1

3


use of information on the web, *e.g.*, World Wide Web pages accessible by URLs for inclusion in the shortlist of information sources. (Col. 12, ll. 29-34)

Google's Tutorial also excludes several embodiments, the presence of which cannot be squared with Google's narrow interpretation of the patent. These include embodiments where a shortlist is generated: (A) based on a user's location *and* preference data, *see* BT's Answering Brief at 6, (B) when the user does not move to a new location but something new becomes associated with the location, *see* BT's Brief at 17-18, or, (C) on the basis of *another* user's location, *see* claims 38-42. As reflected in claim language and the last two referenced embodiments (as well as the situation wherein the location of a fixed terminal is tracked through an IP address) the '040 patent only requires the user's location to be tracked once; automatic updates are not required, but are an option. (*See, e.g.,* claim 18).

    **iv.** <u>**U.S. Patent No. 6,826,598**</u>: Google's Tutorial on the '598 patent suffers from the same deficiencies as its claim construction positions on the patent. It only describes some, but not all, of the features actually claimed. For example, Google presents the concept for indexing information that only appears in claims 16 and 18 as if it's the entire invention. Google omits discussion of the interrelationship between the locality of responsibility (claimed as a first locality) and the locality of interest of the user or locality of pertinence of the object, to which, as claimed in claim 1, the invention is directed. Neither does it address the features of claim 19.

In relation to embodiments that correspond to claims that it attempts to describe (*e.g.*, claims 16 and 18), Google's Tutorial is simply an extension of its improperly narrow claim construction positions. For example, Google portrays that each node taught by the patent has to be a hardware server while the specification clearly teaches that it is a software object. *See* Col. 8, ll. 1-3, 35. Consequently, a node does not need to correspond to a given server.

  **v. U.S. Patent No. 6,169,515 and 6,650,284**: Google's Tutorial provides an inaccurate description of these patents such that the inventions are made to appear narrower than they actually are. In slide 95 of Google's Tutorial, Google highlights the top portion of Fig. 1 and indicates that the "mobile part" is a vehicle. The description of Fig. 1 makes it clear that a "mobile part" is a cell phone: "The mobile part comprises a mobile telephone 1." Col. 7, l. 16. In the next slide, Google indicates the GPS must be a part of the vehicle, but this same description of Fig. 1 states: "The mobile part comprises ... a GPS [] satellite receiver 7." Col. 7, ll. 16-23. In slides 96-100, Google suggests a human operator is necessary for the invention, but this is only one embodiment in which a user wishes to speak with a person. *See* Col. 8, ll. 31-35.

  Google also rehashes points from its claim construction brief. In slides 101-102, Google indicates that overlay areas are portions of a road, but the specification is far broader and includes an embodiment in which an overlay area represents a site having security restrictions. *See* Col. 4, ll. 39-44. Additionally, Google indicates that overlays areas all have associated directional information. However, the patent uses the term "guidance information" not "directional information" and guidance information includes information which is not directional *e.g.*, weather forecasts. *See* Col. 15, ll. 13-19. Neither do overlay areas need to have associated guidance information. *See* Col. 14, ll. 21-22, 31-32.; Col. 14, ll. 56-57.

  On the '284 patent, Google shows a truck having weight/height restrictions in its Tutorial, but the invention contemplates any type of vehicle (*e.g.*, a bicycle) having a characteristic that may be relevant route selection (*e.g.*, routing a bicycle to a bike path rather than a highway). The mobile part need not be intrinsic to a vehicle but might, for example, be carried by a person riding a bike.

<div style="text-align: right;">

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Monté T. Squire
Melanie K. Sharp (No. 2501)
Monté T. Squire (No. 4764)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6681
msharp@ycst.com

PROSKAUER ROSE LLP
James H. Shalek
Nolan M. Goldberg
Robert S. Mayer
Joon R. Yoon
Fabio E. Tarud
Jonathan M. Sharret
Eleven Times Square
New York, NY 10036
(212) 969-3000

Justin J. Daniels
Sean D. Whaley
One International Place
Boston, MA 02110-2600
(617) 526-9600

</div>

Dated: April 15, 2013

*Attorneys for British Telecommunications plc*

01:13527293.1