## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRITISH TELECOMMUNICATIONS PLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 11-1249-LPS |
| | : | |
| GOOGLE INC., | : | |
| | : | |
| Defendant. | : | |

James H. Shalek, Nolan M. Goldberg, Robert S. Mayer, Joon R. Yoon, Fabio E. Tarud, Jonathan M. Sharret, PROSKAUER ROSE LLP, New York, NY.

Justin J. Daniels, Sean D. Whaley, PROSKAUER ROSE LLP, Boston, MA.

Melanie K. Sharp, Monté T. Squire, Robert M. Vrana, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE.

   Attorneys for Plaintiff.

Dimitrios T. Drivas, Kevin X. McGann, Jeffrey J. Oelke, John P. Scheibeler, Robert E. Counihan, WHITE & CASE LLP, New York, NY.

Jack B. Blumenfeld, Paul Saindon, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE.

   Attorneys for Defendant.

## MEMORANDUM OPINION

September 9, 2013
Wilmington, Delaware

**STARK, U.S. District Judge:**

Presently before the Court is the issue of claim construction of various disputed terms found in U.S. Patent Nos. 6,151,309 (the "'309 patent"), 6,578,079 (the "'079 patent"), 6,397,040 (the "'040 patent"), 6,826,598 (the "'598 patent"), 6,169,515 (the "'515 patent"), and 6,650,284 (the "'284 patent") (collectively, the "patents-in-suit").[1]

## I.   BACKGROUND

On December 15, 2011, British Telecommunications PLC ("BT" or "Plaintiff") filed this patent infringement action against Google Inc. ("Google" or "Defendant"). (D.I. 1)  The parties completed briefing on claim construction on April 15, 2013. (D.I. 112, 116, 123, 125)  The Court held a *Markman* hearing on April 29, 2013 (D.I. 202) (hereinafter "Tr.").  Following the hearing, the Court ordered supplemental briefing. (D.I. 139)  The parties completed supplemental briefing on May 15, 2013. (D.I. 143, 146, 152)

## II.   LEGAL STANDARDS

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotation marks omitted).  Construing the claims of a patent presents a question of law. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 388-90 (1996).  "[T]here is no magic formula or catechism for conducting claim construction." *Phillips*, 415 F.3d at 1324.  Instead, the court is free to attach the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law." *Id.*

"[T]he words of a claim are generally given their ordinary and customary meaning . . .

---

[1]The patents-in-suit may be located in the record at D.I. 88 Ex. A.

[which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312-13 (internal citations and quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). The patent specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

While "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim also must be considered. *Phillips*, 415 F.3d at 1314. Furthermore, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment . . . [b]ecause claim terms are normally used consistently throughout the patent . . . ." *Id.* (internal citation omitted).

It is likewise true that "[d]ifferences among claims can also be a useful guide . . . . For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15 (internal citation omitted). This "presumption is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim." *SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003).

It is also possible that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. It bears emphasis that "[e]ven

2

when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (internal quotation marks omitted), *aff'd*, 481 F.3d 1371 (Fed. Cir. 2007).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman*, 52 F.3d at 980. The prosecution history, which is "intrinsic evidence," "consists of the complete record of the proceedings before the PTO [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

A court also may rely on "extrinsic evidence," which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. For instance, technical dictionaries can assist the court in determining the meaning of a term to those of skill in the relevant art because such dictionaries "endeavor to collect the accepted meanings of terms used in various fields of science and technology." *Phillips*, 415 F.3d at 1318. In addition, expert testimony can be useful "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Id.* Nonetheless, courts must not lose sight of the

3

fact that "expert reports and testimony [are] generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Id.* Overall, while extrinsic evidence "may be useful" to the court, it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19.

Finally, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007).

## III. DISCUSSION

### A. The '309 Patent

The '309 patent relates generally to the availability of services to users as they move between networks comprised of different types of data connections.

#### 1. "software agents"[2]

    a.    Plaintiff's Proposed Construction: "Specialized intelligent software systems."

        Alternatively, "Specialized intelligent software systems that cooperate to provide a range of services."[3]

---

[2]Claims 1, 3-4, 10, 12, 18-21 of the '309 patent.

[3]In response to the Court's order for supplemental briefing, BT proposed this alternative construction. (D.I. 143)

4

      b.    Defendant's Proposed Construction: "Specialized intelligent
software systems that cooperate to provide a range of services
across a network platform, each of which has the following generic
internal components: a parser, a world view (database), a
negotiator (responsible for buying/selling resources), and a
resource controller (responsible for controlling the functional
actions of the agent)."

      c.    Court's Construction: "Specialized intelligent software systems
that cooperate to provide a range of services across a network
platform."

The parties agree that "software agents" means, at a minimum, "specialized intelligent

software systems." The dispute between the parties is over Google's proposed additional

limitations.

The specification supports the Court's construction. The specification describes agents as

"specialised intelligent software system . . . which cooperate to provide a range of services . . .

across a network platform." ('309 patent col. 1 ll. 47-50) This portion of the specification

essentially defines the disputed term. (*See* D.I. 112 at 5-6; D.I. 116 at 3)

The Court concludes that Google's additional language is not appropriate. While the

specification states that "the agents all have the following generic internal components: a parser,

a world view (database), a negotiator (responsible for buying/selling resources), and a resource

controller (responsible for controlling the functional actions of the agent)" ('309 patent col. 4 ll.

40-44), this description has limited applicability and "[r]efer[s] to FIG. 4" (*id.* at l. 40). Figure 4

is a preferred embodiment, "described, by way of example only" (*id.* at col. 2 ll. 41-42), and it is

found in the Exemplary Embodiments section; and the Court is not persuaded that the term

should be limited to this embodiment. *Cf. Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341,

1348 (Fed. Cir. 2009) (stating that "patentee is entitled to the full scope of his claims, and we

5

will not limit him to his preferred embodiment or import a limitation from the specification into the claims"). *See generally SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1344 (Fed. Cir. 2011) (limiting claim scope when specification expressly limits all embodiments).

Nor is the Court persuaded by Google's interpretation of the prosecution history. To distinguish claim 1 from the prior art reference Jonsson, the patentee stated that Jonsson does not teach or suggest that software agents include "an *object-oriented* system architecture." (D.I. 115 Ex. C at Goog_BT_675-76) The patentee did not require "object-oriented" to include a parser, world view, negotiator, and a resource controller, nor did the patentee clearly and unambiguously distinguish the prior art on this basis. The Court will decline to adopt Google's additional limitations.

### 2. "data relevant to service provision [via] the network"[4]

  a. Plaintiff's Proposed Construction: Plain meaning.

    Alternatively, "Information respecting price, path, bandwidth, availability or other information relevant to the provision of service through the network."[5]

  b. Defendant's Proposed Construction: The scope of this term is indefinite, but it must include at least location-dependent data concerning at least the available paths, bandwidth and pricing.

  c. Court's Construction: "Information respecting price, path, bandwidth, availability or other information relevant to the provision of service through the network."

"Only claims not amenable to construction or insolubly ambiguous are indefinite."

---

[4]Claims 1, 3-4, 10, 12, 18-21 of the '309 patent.

[5]In its supplemental briefing, BT submitted this alternative construction. (D.I. 143)

6

*Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1250 (Fed. Cir. 2008) (internal

quotation marks omitted). To prove indefiniteness, "an accused infringer [must] show[] by clear

and convincing evidence that a skilled artisan could not discern the boundaries of the claim based

on the claim language, the specification, and the prosecution history, as well as her knowledge of

the relevant art area." *Id.* at 1249-50. Here, Defendant falls short of this "exacting standard." *Id.*

at 1249.

The remaining issue before the Court is whether the disputed term requires a conjunctive

definition including path, bandwith, and price, or if the three elements are disjunctive. The Court

does not find support for Defendant's conjunctive alternative construction. The Examiner listed

types of data included in "data relevant to service provision via the network." In particular, the

Examiner stated that "price signal, quality of service parameter, *etc.*" would fall within the

meaning of the term. (D.I. 115 Ex. C at Goog_BT_1029 (emphasis added)) As Defendant points

out, an Examiner's statement "may be evidence of how one of skill in the art understood the term

at the time the application was filed." (D.I. 116 at 5 (quoting *Salazar v. Procter & Gamble Co.*,

414 F.3d 1342, 1347 (Fed. Cir. 2005))) The Examiner's use of "etc." indicates that the list is

non-exhaustive and that not every item on the list is required to be present.

### 3. "updating data . . . on a point-by-point continuous basis as the user changes location within the network"[6]

   a.  Plaintiff's Proposed Construction: Plain meaning.

       Alternatively, "Updating information respecting price, path,
       bandwidth, availability or other information relevant to the
       provision of service through the network continuously on a point-

---

[6]Claims 1, 3-4, 10, 12, 18-21 of the '309 patent.

7

> by-point basis as the user changes location within the network."[7]

    b.    <u>Defendant's Proposed Construction:</u> "Updating data concerning at least the available paths, bandwidth and pricing continuously each time a user enters a new cell (i.e., crosses a cell boundary)."

    c.    <u>Court's Construction:</u> "Updating information respecting price, path, bandwidth, availability or other information relevant to the provision of service through the network continuously on a point-by-point basis as the user changes location within the network."

BT objects to Google's proposed limitations (1) "data concerning available paths, bandwidth, and pricing," and (2) that data is updated only when a user enters a new cell.

As discussed above, the Court finds Defendant's conjunctive "paths, bandwidth and pricing" limitation unsupported.

The intrinsic evidence supports the other portions of the Court's construction. In order to overcome an obviousness rejection based on U.S. Patent No. 5, 802,502 ("Gell"), the patentee added the language "on a point-by-point continuous basis as the user changes location within the network" and "dependent upon the location of the user within the network." (D.I. 115 Ex. C at Goog_BT_1060-63) The amendment addressed the distinction that Gell was "not particularly directed to a mobile user." (*Id.* at Goog_BT_1063)

In light of the specification, the Court concludes that the amendments made due to Gell do not limit the claims to updating only when a user enters a new cell. The specification states, without reference to cell boundaries, that Network Management Agents "continuously update that resource [required for a particular service] configuration to deal with changes of delivery point for the service due to customer's mobility." ('309 patent col. 4 ll. 10-13) The specification

---

[7]BT submitted this alternative construction in its supplemental briefing. (D.I. 143)

similarly states that "while . . . the customer is moving the Customer Agent continuously sends messages updating customer's current location to the network management agents for route (of the service) update . . . ." (*Id.* at col. 7 ll. 38-41) Additionally, dependent claim 19 states that "the transfer of the users *between cells* of the mobile networks . . . causes update data to be made available to the user," suggesting that independent claim 18 (for example) does not contain the same "cell to cell" limitation. (*Id.* at col. 14 ll. 11-12 (emphasis added)) *See Phillips*, 415 F.3d at 1314-15.

## B.    The '079 Patent

The '079 patent relates generally to providing users with information originating from multiple services through a single portal with a single password.

### 1.    "customer-associated lists of identities of information items . . . for which the respective associated customer has access rights"[8]

    a.    Plaintiff's Proposed Construction: "Customer-associated lists that identify information items for which the customer has access rights."

    b.    Defendant's Proposed Construction: "Customer specific lists that identify documents accessible in electronic form for which the customer has access rights."

    c.    Court's Construction: "Customer-associated lists that identify information items, not limited to text-based documents, for which the customer has access rights."

There are two disputes in construing the term: (1) whether the term should be limited to customer "specific" lists and (2) whether the term should be limited to text-based documents accessible in electronic form.

_____

[8]Claims 14-15, 20-22 of the '079 patent.

9

Google does not address how its proposed limitation of customer "specific" lists is supported by the intrinsic or extrinsic evidence. Google states that its proposal provides clarity to the term, but the Court does not agree. The Court declines to adopt "specific" in its construction.

The specification expressly states that "the term information item refers both to documents linked in a menu structure and to a single non-linked document." ('079 patent col. 4 ll. 65-67) *See Phillips*, 415 F.3d at 1316 ("[T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs."). Throughout the specification, "information items" or "items" and "documents" are used interchangeably. (*See, e.g.*, '079 patent col. 1 ll. 22-23 ("documents (herein referred to as information items, or just items)"); *id.* at col. 4 ll. 28-30 ("a single item, also referred to herein as a document")) Information items, therefore, include documents.

The Court is not persuaded that information items are limited to documents that are text-based or "accessible in electronic form." As the specification statement excerpted above shows, the patentee intended information item to include documents linked in a menu structure. This suggests that documents without a paper or text-based equivalent may still come within the meaning of information item, if they are linked to a text-based document. There is extrinsic support for such a view: the Microsoft Press – Computer Dictionary defines "document" as "any self-contained piece of work created with an application program . . . . People generally think of documents as word-processed materials only. To a computer, however, data is nothing more than a collection of characters, so a spreadsheet or a graphic is as much a document as is a letter

10

or report." (D.I. 113 Ex. A at 129)

## 2. "information sources"[9]

a. Plaintiff's Proposed Construction: Plain meaning.

Alternatively, "Storage location of an information item at a remote ISP (Information Service Provider) or a readily-accessible storage location of information item originating at a remote ISP."[10]

b. Defendant's Proposed Construction: "Storage locations of a remote information service provider having an agreement with the operator of the network to provide access to the items in the storage locations."

c. Court's Construction: "Storage location of an information item at a remote ISP (Information Service Provider) or a readily-accessible storage location of information item originating at a remote ISP."

The dispute between the parties is whether information can be stored both at a remote ISP and a readily-accessible storage location. The patent teaches two sources of information storage: the corresponding ISP and caching storage. Therefore, the Court will include both in its construction.

The detailed description of exemplary embodiments states that "if the selected information item is in the customer's profile, then the SN retrieves the . . . information item from the caching storage, if the item is held in the caching storage, or sends an access message to the corresponding ISP to retrieve these pages of the information item from the associated database." ('079 patent col. 7 ll. 24-30) Further, "[t]he SN comprises local caching storage, and subject to the amount of caching storage available, the SN accesses the remote [ISP] databases, retrieves

---

[9]Claims 14-15, 20-22, 27 of the '079 patent.

[10]BT submitted this alternative construction in its supplemental briefing. (D.I. 143)

11

. . . the information items . . . and stores them in the caching storage.  In this way, . . . [the] information item can be retrieved immediately from the caching storage . . . ."  (*Id.* at col. 5 ll. 44-50)  As the '079 patent envisions two areas of storage – a readily-accessible storage and ISP databases – Google's proposed construction is improper.

Google argues that if the Court is inclined to include cache storage, the Court should specify that such storage is short-term or temporary.  (D.I. 146 at 8)  The Court does not agree. Indeed, in the cited portion of the specification relied upon by Google, there is no mention of timed storage, just a reference to caching storage being limited by the amount of storage available.  (*See id.* (citing '079 patent col. 5 ll. 44-48))

## C.    The '040 Patent

The '040 patent relates generally to tracking the location of a user and providing information based on the user's location.

1.    **"shortlist"**[11]

    a.    Plaintiff's Proposed Construction: Plain meaning.

        Alternatively, "List of selected candidates from which a final choice is made."[12]

    b.    Defendant's Proposed Construction: "A shortened list that excludes items related to other locations."

    c.    Court's Construction: "A filtered list that excludes items related to other locations."

There are two disputes over this term.  First, whether the shortlist must be "shortened"

---

[11]Claims 1-5, 8-9, 12-15, 17, 19-24, 26-27, 30-33 of the '040 patent.

[12]BT submitted this alternative construction in its supplemental briefing.  (D.I. 143)

from another list and, second, whether the shortlist excludes information.

The intrinsic record supports the conclusion that a shortlist is created dynamically, rather than only by shortening through eliminating entries from a longer list. The specification states that "information specific to the location of the user may be shortlisted, thereby filtering out information which related to other locations." ('040 patent col. 3 ll. 4-6) The filtering process is described as "dynamically alter[ing]" information for each user. (*Id.* at l. 9; D.I. 112 at 16) Figure 5 similarly supports the Court's construction. Notably absent from the figure is an initial creation of a general list followed by elimination through subtraction of information based on the user. Rather, the figure shows ***adding*** information to construct the shortlist rather than subtracting non-relevant information. Thus, the Court will not include "shortened" – which implies a requirement of subtraction – in its construction.

The parties appear to agree that the shortlist excludes information based on location (D.I. 146 at 9; Tr. at 69, 78), and this exclusion is supported by the claim language. Claim 1 claims a method comprising "generating a shortlist of information sources for said user on the basis of said tracking information and said location data" ('040 patent col. 12 ll. 44-46), indicating that the shortlist is location-dependent.

2.     **"on the basis of [said tracking information and said location data/the detected location of the user and said location data/intersections between said location and said localities]"**[13]

a.     Plaintiff's Proposed Construction: Plain meaning.

Alternatively, "on the basis of [said tracking information and said location data/the detected location of the user and said location data]" means "based on the location of a user, as detected by the system, and the area in which information from an information source is deemed to be relevant."[14]

"on the basis of intersections between said location and said localities" means "based on the intersection between the location of a user, as detected by the system, and the area in which information from an information source is deemed to be relevant."[15]

b.     Defendant's Proposed Construction: "Based upon the receipt of (i) user location information each time the user moves to a new location, instead of a user request, and (ii) location data for information sources."

c.     Court's Construction: "on the basis of [said tracking information and said location data/the detected location of the user and said location data]" means "based on the location of a user, as detected by the system and not a user request, and the area in which information from an information source is deemed to be relevant."

"on the basis of intersections between said location and said localities" means "based on the intersection between the location of a user, as detected by the system and not a user request, and the area in which information from an information source is deemed to

---

[13]Claims 1-5, 8-9, 12-15, 17, 19-24, 26-27, 30-33 of the '040 patent.

[14]In response to the Court's request, BT submitted an alternative construction for claims 1 and 21. (D.I. 143)

[15]In response to the Court's request, BT submitted this alternative construction for claim 33. (D.I. 143) Google does not object to adding "intersections between the user location information and . . ." before "location data . . ." in BT's amended proposal for claim 33. (D.I. 146 at 10 n.5)

14

be relevant."

The parties have two disputes: (1) whether the term allows for shortlist generation when a user is stationary, and (2) whether the term excludes shortlist generation in response to a user request.

The Court does not believe the limitation "each time the user moves to a new location" is appropriate. The specification describes a situation in which a shortlist is updated "even when the user remains stationary." ('040 patent col. 11 l. 10) The claim language also supports the Court's construction. Dependent claim 18 specifically claims generating information "in response to a change in the tracking information" (*id.* at col 13. ll. 43-45), suggesting that user movement is not a requirement of the independent claims. *See Phillips*, 415 F.3d at 1315 ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.").

The Court is persuaded that the term excludes user-requested generation of the shortlist. During prosecution, in order to overcome a rejection over U.S. Patent No. 6,049,711 ("Ben-Yehezkel"), the patentee noted that Ben-Yehezkel generated a message "in response to a request message," and emphasized that, unlike the '040 patent, "the information service request of Ben-Yehezkel is not made on the basis of the location signal." (D.I. 115 Ex. C at Goog_BT_6095-96) Thus, the '040 patent claims the generation of information as a result of user location and tracking information, rather than a result of a user request.

15

**D.    The '598 Patent**

The '598 patent relates generally to storing and retrieving location-based information.

1.    **"distributed processing environment"**[16]

a.    Plaintiff's Proposed Construction: "Information processing environment in which work is performed by separate computers that are linked through a communications network."

b.    Defendant's Proposed Construction: "A collection of geographically dispersed servers interconnected via a network that work together to perform discrete tasks necessary to accomplish a common function."

c.    Court's Construction: "A collection of servers interconnected via a network that work together to perform tasks."

The claim language and other intrinsic evidence support the Court's construction. Claim

15 claims "[a] method according to claim 1, wherein said network of data storage devices

comprises a plurality of servers interconnected by data links and forming a distributed processing

environment." Hence, claim 15 itself provides substantial guidance for this disputed term,

supporting the conclusion that "distributed processing environment" includes multiple servers

connected within a network.

The Court is not persuaded that the term requires a "geographically dispersed" limitation,

as proposed by Google. Neither the specification nor prosecution history supports such a

limitation. The specification states that the servers are connected by a "wide area network

(WAN), such as the Internet" ('598 patent col. 5 l. 66-col. 6 l.1), without regard to geographical

location, and the prosecution history merely states that a distributed network is accessible from

multiple remote user terminals (D.I. 115 Ex. C at Goog_BT_4895-4901), likewise without

_____

[16]Claim 15 of the '598 patent.

16

mention of a geographical limitation.

Both proposed constructions incorporate the concept that work is performed within the distributed processing environment. The remaining dispute is whether the work performed involves "discrete tasks necessary to accomplish a common function," as proposed by Google. Neither the intrinsic nor extrinsic evidence support this additional language, and the Court will decline to adopt it.

Finally, the Court will decline to adopt the language "separate computers," as proposed by BT. BT's sole support is a technical dictionary. (*See* D.I. 112 at 19) Though extrinsic evidence "may be useful" to the Court, it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Phillips*, 415 F.3d at 1318-19. The intrinsic evidence provides no indication that "separate computers" is a requirement of the claim.

### 2. "distributed network of data storage devices"[17]

a. Plaintiff's Proposed Construction: Plain meaning.

Alternatively, "Network in which data storage is handled by separate data storage devices rather than by a single main data storage device."[18]

b. Defendant's Proposed Construction: "Servers, connected via a wide area network, that provide location-dependent storage."

c. Court's Construction: "Network in which data storage is handled by separate data storage devices rather than by a single main data storage device."

---

[17]Claims 1, 3, 5, 8, 10, 15-25 of the '598 patent.

[18]BT submitted this alternative construction in its supplemental briefing. (D.I. 143)

17

Google's construction proposes to add two limitations: (1) that the term is limited to location-dependent storage, and (2) that servers are connected via a wide area network (WAN).

The Court concludes that importing "location-dependent storage" into this claim term is improper. The patent claims "[a] method of storing and/or retrieving location-based information, the method comprising: storing, in a distributed network of data storage devices . . . ." ('598 patent col. 17 ll. 17-19) As the surrounding claim language provides, the invention goes to storing and retrieving location-based *information*. The Court's construction is consistent with the title of the '598 patent, "Storage and retrieval of location based information." Google fails to persuade the Court that the term is limited to location-dependent storage as opposed to location-dependent information.

The Court similarly declines to adopt the language "[s]ervers, connected via a wide area network." Google primarily relies on Figure 1 and its description in the specification. (*See* '598 patent col. 5 ll. 66-67) This is an exemplary embodiment and does not necessarily limit the claim. The claim language supports the Court's rejection of Google's proposal. For example, dependent claim 15 further describes "said network of data storage devices" as a "plurality of servers interconnected by data links and forming a distributed processing environment." (*Id*. at col. 17 ll. 62-65) The claim language makes no reference to WAN, nor does it otherwise limit the type of network required by the claims.

Google's citation to the prosecution history is not persuasive. Google seeks to rely on the patentee's statements made to overcome rejections over WO 96-07110 ("Mannings"). Specifically, the patentee stated that Mannings did not anticipate the claims because "Mannings discloses a navigation information system having a **central** database . . . and therefore fails to

18

teach or suggest a **distributed** network . . . ." (D.I. 115 Ex. C at Goog_BT_4904 (emphasis in

original)) Notably, the patentee did not use "WAN," and the Court does not find a clear and

unambiguous disavowal of other distributed networks.

> 3. **"data access nodes each of which is responsible for a predefined**
> **locality" / "data access nodes . . . each said data access node being**
> **provisioned with a locality for which it is responsible"**[19]
>
> > a. Plaintiff's Proposed Construction: "Elements in a data structure
> > through which data may be accessed, each of which is responsible
> > for a predefined locality."
> >
> > b. Defendant's Proposed Construction: "A server or segment thereof
> > containing data defining: (i) a locality for which the node is
> > responsible, (ii) a predefined level of the node within a network of
> > indexing nodes, (iii) references indicating the nodes' relaxation to
> > one or more other nodes in the network, and (iv) indices for
> > information sources by locality and name."
> >
> > c. Court's Construction: "Elements in a data structure through which
> > data may be accessed, each of which is responsible for a predefined
> > locality."

The parties' have four disputes: (1) whether data access nodes are limited to servers or

segments thereof containing data; and whether the term requires (2) a predefined level of the

node within a network of indexing nodes, (3) references indicating the nodes' relation to one or

more other nodes in the network, and (4) indices for information sources by locality and name.

The Court agrees with BT that data access nodes are not limited to servers. The

specification states that "location index objects include[] a software code" and that "[e]ach

location index object . . . forms a node of an indexing network." ('598 patent col. 7 ll. 4-5; *id*. at

col. 8 ll. 1-2) Thus, the specification indicates that a data access node can be software code and

---

[19]Claims 16-18, 24-25 of the '598 patent.

is not limited to servers.

The Court also concludes, based on the specification and claim language, that the remaining disputed limitations should not be included in its construction. The portion of the specification relied on by Google describes a preferred embodiment. (*See id.* at col. 6 ll. 55; *id.* at col. 8 ll. 4-25; *id.* at fig. 2) As further support, the Court notes that the disputed term appears in both claims 16 and 18, but only claim 16 includes the additional limitation of a "higher level node responsible for a larger locality and lower level nodes responsible for small localities . . . ." (*Id.* at col. 18 ll. 5-7) Although claim differentiation is only a guide, and not a rigid rule, *see Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380-81 (Fed. Cir. 2006), here claim differentiation, in combination with the specification, persuades the Court.

### 4. "selecting one of said first localities to represent second localities for which information is to be stored and/or retrieved"[20]

   a.  Plaintiff's Proposed Construction: "Choosing one or more of the defined first localities that intersects with one or more second localities for which information is to be stored and/or retrieved."[21]

   b.  Defendant's Proposed Construction: "Choosing one or more of the defined first localities that intersects with one or more second localities to (a) index information that is to be stored and/or (b) act as an index for information that is to be retrieved."

   c.  Court's Construction: "Choosing one or more of the defined first localities that intersects with one or more second localities for which information is to be stored and/or retrieved."

The only dispute between the parties is whether the claim construction should include

---

[20]Claims 1, 3, 5, 8, 10, 15 of the '598 patent.

[21]BT amended its construction during the hearing to include "for which information is to be stored and/or retrieved." (Tr. at 115)

language related to indexing. The claim language supports the Court's construction.

Absent from claim 1 is language referring to indexing, which is present in independent claims 16 and 18. (*Compare* '598 patent col. 17 ll. 16-30 ("selecting ones of said first localities to represent second localities"), *with id.* at col. 18 ll. 9-13, 25-28 ("indexing references to information sources")) The Court is not persuaded that "to represent" means "to act as an index," as Google contends. Thus, the Court will not import an indexing limitation into the term.

### E. The '515 Patent

The '515 patent relates generally to navigation information systems having a fixed part and mobile parts.

1. **"overlay area"**[22]

    a.   Plaintiff's Proposed Construction: "Representation of an area within a larger geographical area."

    b.   Defendant's Proposed Construction: "Representation of a part of a road that has a navigation instruction associated with that part of the road."

    c.   Court's Construction: "Representation of an area within a larger geographical area."

The dispute between the parties is whether "overlay area" must include directional information and be associated with part of a road.

The Court's construction is supported by the specification. Although the specification states that "[t]his invention relates to navigation information systems" ('515 patent col. 1 l. 12), the specification supports a conclusion that each overlay area does not necessarily contain directional information. Indeed, in describing the exemplary embodiment, Figure 5b, the

---

[22]Claims 19-20, 35-39, 41, 43, 46, 48-50 of the '515 patent.

specification states that "[t]he information (*if any*) associated with overlay area 32*b* is the same

as that previously associated with overlay area 32." (*Id.* at col. 14 ll. 56-58 (emphasis added))

Hence, overlay areas may not contain any information. The specification also supports a finding

that information associated with overlay areas is not necessarily directional information. For

example, information may relate to weather or tourist attractions. (*See id.* at col. 15 ll. 13-20)

The Court also concludes that this term is not limited to roads. The Field of the Invention

portion of the patent expressly states that "[t]his invention relates to a navigation information

system" and also adds that "other applications are possible." (*Id.* at col. 1 ll. 12-15) One such

application is "a hand-held device for guiding a pedestrian." (*Id.* at col. 6 ll. 51-53) This general

description of the patent is consistent with the specification, which describes an embodiment

independent of a roadway system: a "geographical overlay . . . for site security." (*Id.* at col. 4 ll.

39-40) Google's construction, although consistent with multiple figures in the patent, would

improperly limit the claim.

> **2. "whereby mobile parts within that overlay area simultaneously receive the same guidance information associated with that overlay area"[23]**
>
> > a. Plaintiff's Proposed Construction: "Mobile parts located within a given overlay area at the same time receive the same guidance information for that overlay area."
> >
> > Alternatively, "Mobile parts located within a given overlay area at the same time receive the same guidance information for that overlay area at or about the same time."[24]

---

[23]Claims 19-20, 35-39, 41, 43, 46, 48-50 of the '515 patent.

[24]The Court did not request BT to submit this alternative construction, however BT submitted it along with the requested disputed terms. (D.I. 143)

b.    Defendant's Proposed Construction: "All mobile parts within a
given overlay area receive the same guidance information at the
same time."

c.    Court's Construction: "All mobile parts within a given overlay area
receive the same guidance information at the same time."

The primary dispute between the parties is over the meaning of "simultaneously" and

whether it refers to the type and/or the timing of information received.  The Court concludes that

it refers to both.

The intrinsic evidence supports the Court's construction.  During reexamination, "the

Patent Owner respectfully submitt[ed] that selectively importing the *simultaneous reception* by

all of all [sic] congestion information feature from [prior art] would not have been obvious."

(D.I. 123 Ex. 1 at Goog_BT_00868791 (emphasis added))  Similarly, the patentee stated in

response to the June 29, 1999 Office Action that "it is respectfully submitted that

'simultaneously' *clearly indicates*, not that any mobile part receives the information and

simultaneously receives something else as the Examiner suggests, but that *all mobile parts*

*simultaneously receive* the common information."  (D.I. 115 Ex. C at Goog_BT_1697 (emphasis

added))  Again, in its response to a November 1999 Office Action, the patentee explained that

"simultaneous" refers to the receipt of information.  (*Id.* at Goog_BT_1710-11)  Specifically, the

patentee amended the claim language, "whereby mobile parts within that overlay area *may*

*simultaneously receive* common guidance information associated with that overlay area," to

"whereby mobile parts within that overlay area *simultaneously receive* the same guidance

information associated with that overlay area."  (*Id.* at Goog_BT_1711 (emphasis added))

Deleting the word "may" supports a conclusion that simultaneous receipt is a requirement of the

23

claim. The patentee also emphasized that its amendments were intended to clarify that the same information is "'simultaneously' transmitted or received." (*Id.* at Goog_BT_1714)

### 3. "guidance information"[25]

    a.    <u>Plaintiff's Proposed Construction</u>: "Any locality-dependent information, such as local facilities, tourist attractions, weather forecasts, and public transportation, as well as route guidance."

    b.    <u>Defendant's Proposed Construction</u>: "Information directing a user from a location to a destination that may also include locality-dependent information, such as information about local facilities, tourist attractions, weather forecasts, and public transportation."

    c.    <u>Court's Construction</u>: "Any locality-dependent information, such as local facilities, tourist attractions, weather forecasts, and public transportation, as well as route guidance."

The dispute between the parties is whether guidance information must always include information directing a user from one location to another, or if it can simply be location-dependent information.

The specification states that "[a]lthough the described embodiment relates to the provision of route guidance information, other locality-dependent information may be provided as well, *or instead*, such as information about local facilities, tourist attractions, weather forecasts, public transport information, etc. The term 'guidance information', as used in this specification, embraces any such information." ('515 patent col. 15 ll. 13-19 (emphasis added)) The Court will adopt a slight modification of this express definition, as proposed by BT.

The Court is not persuaded that the prosecution history dictates a different construction. During prosecution, the patentee distinguished the prior art reference, Penzias, as disclosing a

---

[25]Claims 19-20, 35-39, 41, 43, 46, 48-50 of the '515 patent.

"simple itinerary" rather than guidance information. (D.I. 115 Ex. C at Goog_BT_1424-25) The

Court does not agree with Defendant that the patentee's statements narrowed or disclaimed the

scope of the express definition provided in the specification. The statement that guidance

information as disclosed in the specification differs from a point-to-point itinerary is consistent

with the Court's construction.

### F. The '284 Patent

The '284 patent is related to the '515 patent. The '284 patent differs in that information

sent to the fixed part is related to an intrinsic physical characteristic of a vehicle.

    1.    **"an [intrinsic] physical characteristic of a vehicle"**[26]

        a.    <u>Plaintiff's Proposed Construction:</u> Plain meaning.

            Alternatively, "Type of vehicle or the vehicle's height or weight."[27]

        b.    <u>Defendant's Proposed Construction:</u> "Permanent user-specific
information that is a trait of a particular vehicle."

        c.    <u>Court's Construction:</u> "A trait of a particular vehicle, including the
type of vehicle, or the vehicle's height or weight."

The parties appear to agree that this term includes characteristics such as the type of

vehicle or its height or weight. Defendant relies on a portion of the specification which states

that "[t]he server also captures any permanent user-specific information such as the type of

vehicle, which may be relevant for the route to be selected e.g. because of height or weight

restrictions." ('284 patent col. 11 ll. 43-46) Similarly, Plaintiff believes the plain and ordinary

---

[26]Claims 1, 16, 19, 27, 31, 33 of the '284 patent.

[27]In response to the Court's request, BT submitted this alternative construction. (D.I.
143)

meaning of the term is understood as the type of vehicle or the vehicle's height or weight.

The only dispute that remains is whether the Court should include the term "permanent user-specific information" in its construction. The Court concludes that this language does not add clarity and is not otherwise supported, and will decline to include it.

## IV.   CONCLUSION

For the foregoing reasons, the Court will construe the disputed claim terms consistent with this Memorandum Opinion. An appropriate Order follows.