IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRITISH TELECOMMUNICATIONS PLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 11-1249 (LPS) |
| | ) | |
| GOOGLE INC., | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |

**DEFENDANT GOOGLE INC.'S ANSWERING BRIEF IN OPPOSITION
TO PLAINTIFF BRITISH TELECOMMUNICATIONS PLC'S OPENING
BRIEF IN SUPPORT OF PARTIAL *DAUBERT* MOTION TO PRECLUDE
JAMES E. WHITE FROM TESTIFYING OUTSIDE HIS EXPERTISE**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Paul Saindon (#5110)
Eleanor Tennyson (#5812)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
psaindon@mnat.com
etennyson@mnat.com

OF COUNSEL:                                     *Attorneys for Defendant*

Dimitrios T. Drivas
Kevin X. McGann
Jeffrey J. Oelke
John P. Scheibeler
Robert E. Counihan
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY  10036
(212) 819-8200

Original Filing Date:  December 2, 2013
Redacted Filing Date:  December 9, 2013

# TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF PROCEEDINGS ....................................................... 1

II.   SUMMARY OF ARGUMENT .............................................................................. 1

III.  STATEMENT OF FACTS...................................................................................... 2

    A.    The '598 Patent ........................................................................................... 3

    B.    Mr. White's Qualifications and Invalidity Opinions........................................... 4

    C.    Relevant Prior Art References: Darcie, Takagi and Choy ................................ 4

IV.   LEGAL STANDARDS FOR ADMISSIBILITY OF EXPERT TESTIMONY ...... 5

V.    ARGUMENT ......................................................................................................... 7

    A.    BT Misstates the Qualifications Necessary for an Invalidity Expert ................. 7

    B.    Neither Party Requires a POSITA to Have Experience in GIS Systems ........... 9

    C.    BT's GIS Requirement is Logically Flawed ...................................................... 9

    D.    Mr. White Is a Person of Extraordinary Skill in the Art and Therefore Is
           Qualified to Testify ...................................................................................... 10

    E.    BT Mischaracterizes Mr. White's Opinions on GIS Systems ......................... 11

VI.   CONCLUSION .................................................................................................... 14

## TABLE OF AUTHORITIES

### CASES

*Advanced Med. Optics, Inc. v. Alcon Inc.*, 2005 U.S. Dist. LEXIS 5803 (D. Del. 2005)……….. 8

*Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*, 430 F. Supp. 2d 346 (D. Del. 2006) ..............13

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ........................................................5

*Holbrook v. Lykes Bros. SS Co., Inc.*, 80 F. 3d 777 (3d Cir. 1996)............................................6, 7

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994) ......................................................6

*In re TMI Litig.*, 193 F.3d 613 (Fed. Cir. 1999) ...........................................................................6

*Jaasma v. Shell Oil Co.*, 412 F. 3d 501 (3d Cir. 2005)...................................................................5

*Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802 (3d Cir. 1997) .......................................5, 6, 13

*KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007)................................................................7, 8

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ............................................................6, 7

*Sun-Mate Corp. v. Koolatron Corp.*, 2011 U.S. Dist. LEXIS 84726 (C.D. Cal. Aug. 1, 2011)......8

*Sundance, Inc. v. Demonte Fabricating Ltd.*, 550 F.3d 1356 (Fed. Cir. 2008) ......................6, 7, 8

### STATUTES AND RULES

Fed. R. Evid. 702 ............................................................................................................ passim

## TABLE OF ABBREVIATIONS

| Abbreviation | Document or Entity | Exhibit / D.I. |
|---|---|---|
| White Op. Brief | Plaintiff British Telecommunications plc's Opening Brief in Support of Partial *Daubert* Motion to Preclude James E. White from Testifying Outside His Area of Expertise | D.I. 262 |
| Dobson Op. Brief | Defendant Google Inc.'s Opening Brief in Support of its Motion to Exclude Plaintiff's Expert Dr. Michael W. Dobson | D.I. 265 |
| '598 patent | U.S. Patent No. 6,826,598 | Padro Decl., Ex. A[1] |
| Darcie | U.S. Patent No. 6,577,714 | Padro Decl., Ex. B |
| Takagi | U.S. Patent No. 6,107,961 | Padro Decl., Ex. C |
| Choy | Choy et al., "On Real-time Distributed Geographical Database Systems," Proceedings of the Twenty-Seventh Annual Hawaii International Conference on System Sciences, IEEE, 1994 | Padro Decl., Ex. D |
| Dobson Op. | Expert Report of Michael W. Dobson, Ph.D., dated August 9, 2013 | Selected excerpts at Padro Decl., Ex. E |
| Dobson Reply | Reply Expert Report of Michael W. Dobson, Ph.D. in Response to the Rebuttal Expert Report of Christian S. Jensen Ph.D. Regarding Noninfringement of U.S. Patent No. 6,826,598, dated October 11, 2013 | Selected excerpts at Padro Decl., Ex. F |
| Greenspun Op. | Expert Report of Philip Greenspun Ph.D. Regarding Infringement of U.S. Patent Nos. 6,151,308, 6,397,040, 6,578,079, and 6,826,598, dated August 9, 2013 | Selected excerpts at Padro Decl., Ex. G |

---

[1] Citations to the "Padro Ex. __" refer to exhibits attached to the Declaration of John P. Padro in Support of Defendant Google Inc.'s Answering Brief in Opposition to Plaintiff British Telecommunications plc's Opening Brief in Support of Partial *Daubert* Motion to Preclude James E. White from Testifying Outside His Expertise, submitted herewith.

| Abbreviation | Document or Entity | Exhibit / D.I. |
|---|---|---|
| White Op. | Expert Report of James E. White Regarding Invalidity of U.S. Patent No. 6,826,598, dated August 9, 2013 | Selected excerpts at White Decl., Ex. 2[2] |
| White Reply | Reply Expert Report of James E. White Regarding Invalidity of U.S. Patent No. 6,826,598, dated October 11, 2013 | Selected excerpts at White Decl., Ex. 3 |
| Jensen Rebuttal | Rebuttal Expert Report of Christian S. Jensen, Ph.D. Regarding Non-Infringement of U.S. Patent No. 6,826,598, dated September 20, 2013 | Selected excerpts at D.I. 267, Ex. 2 |
| Dobson Tr. | Transcript of the Deposition of Michael W. Dobson, Ph.D., taken on October 30-31, 2013 | Selected excerpts at Padro Decl., Ex. H |
| Greenspun Tr. | Transcript of the Deposition of Philip Greenspun, Ph.D., taken on October 25-28, 2013 | Selected excerpts at Padro Decl., Ex. I |
| White Tr. | Transcript of the Deposition of James E. White, taken on November 6, 2013 | Selected excerpts at Padro Decl., Ex. J |

---

[2] Citations to "White Ex. __" refer to exhibits attached to the Declaration of James E. White in Support of Defendant Google Inc.'s Answering Brief in Opposition to Plaintiff British Telecommunications plc's Opening Brief in Support of Partial *Daubert* Motion to Preclude James E. White from Testifying Outside His Expertise, submitted herewith.

Defendant Google Inc. ("Google") opposes Plaintiff British Telecommunications plc's ("BT") motion to exclude portions of the testimony of Google's expert, James E. White ("Mr. White") on the invalidity of U.S. Patent No. 6,826,598 (the "'598 patent"). D.I. 261, 262. This is Google's answering brief in opposition to BT's motion.

## I.      NATURE AND STAGE OF PROCEEDINGS

Expert discovery concluded on November 6, 2013. On November 15, 2013, the parties exchanged summary judgment motions and motions to exclude expert testimony. The proposed Pretrial Order is due on January 14, 2014 in anticipation of the Pretrial Conference scheduled for January 21, 2013. Trial is scheduled to begin on February 3, 2014.

## II.     SUMMARY OF ARGUMENT

BT's motion to exclude Mr. White's testimony is without merit. The parties agree that: (1) the '598 patent-in-suit, on which Mr. White opines, is directed to distributed networks of data storage devices for the storage and retrieval of information, (2) a person of ordinary skill in the art ("POSITA") with respect to the '598 patent is a person with expertise in computer science and designing distributed networks, and (3) Mr. White has 30 years of experience as a computer scientist and in the design and implementation of distributed networks. The '598 patent does not use the word "map," describe anything about providing or displaying a map or even contain a figure about a map. BT nevertheless contorts the law by arguing that, despite Mr. White's clear qualifications as an expert in the field of the '598 patent, he must also be an expert in Geographic Information Systems ("GIS"), because certain *prior art* references concern GIS. BT's position is at odds with the relevant case law. Instead, the appropriate standard to determine a technical expert's qualifications is the POSITA level of the asserted patent, which BT never addresses in its Opening Brief. In any event, BT's argument is rife with mischaracterizations that purportedly

1

demonstrate Mr. White's lack of understanding of GIS systems.  At best, even if BT's arguments found support in the law or the facts – which they do not – they go to the weight of the evidence and provide no basis for excluding Mr. White from testifying on three particular prior art references.

At bottom, the '598 patent-in-suit concerns distributed systems of data storage devices, areas in which Mr. White has 30 years of particularized expertise and BT's Dr. Michael W. Dobson ("Dr. Dobson"), a geographer, has none.  BT's motion is simply an attempt to misdirect the Court into believing that Dr. Dobson's experience is relevant here.  It is not.  BT's motion should be denied.

## III.    STATEMENT OF FACTS

The '598 patent concerns the creation and use of a distributed database where location-based information can be stored and retrieved. '598 patent, Abstract.  The '598 patent does not describe or make use of the terms "mapping," "digital map products" or "Geographic Information Systems" ("GIS").  *See, e.g.*, '598 patent; Dobson Tr. 72:6-75:17; Greenspun Tr. 702:20-704:21.  Google asserts that the '598 patent is anticipated or rendered obvious in light of a number of prior art references, including U.S. Patent No. 6,577,714 ("Darcie"), U.S. Patent No. 6,107,961 ("Takagi") and "On Real-time Distributed Geographical Database Systems" ("Choy").

Google has offered Mr. White as an expert witness on the invalidity of the '598 patent.  Mr. White submitted opening and reply reports on invalidity (dated August 9, 2013, October 11, 2013, respectively).  In response, BT offered its own expert, Dr. Dobson as a purported expert on the validity of the '598 patent.

A.    <u>The '598 Patent</u>

The '598 patent concerns distributed networks of data storage devices for storing and retrieving information.  *See* '598 patent, Abstract.   The '598 patent has no relation to or requirement regarding the type of databases used to form the distributed network of data storage devices or the location-based data stored within these databases.  *See* '598 patent.  The '598 patent relates to the structure, organization and use of a distributed database, not the contents of that database.  *See, e.g.*, '598 patent, 3:12-32, 8:31-34, 12:21-29; White Tr. 158:10-16.   In contrast, GIS systems are defined by their use of spatial data, not by how they are structured or distributed.  *See* Dobson Tr. 28:25-30:12.

Neither party advocates or even suggests that experience in GIS is required or necessary for a POSITA.  *See, e.g.*, Dobson Op., ¶ 61; Greenspun Op., ¶ 55; Jensen Rebuttal, ¶ 42; White Reply, ¶ 11.  Although the parties dispute the specific level of skill and experience necessary for a POSITA of the '598 patent,[3] they agree that the skills necessary for a POSITA are commensurate with a person skilled and experienced in distributed networks, which are required in all the asserted claims of the '598 patent.  *See, e.g.*, Dobson Tr. 62:22-63:1; Jensen Rebuttal, ¶ 42; White Reply, ¶ 11.  Specifically, both parties agree that a POSITA would have had a background in computer science or a related field and the "skills to design a distributed network."  *See, e.g., id.*; Dobson Op., ¶ 61; Greenspun Op., ¶ 55; White Tr. 36:3-

_____

[3] Specifically, the parties disagree as to the type of skills (i.e., whether the POSITA requires experience in "software engineering or network management experience working with both databases and data communications networks") and length of experience necessary to be a POSITA.  *See* (the POSITA standards proposed by Google's experts) - Jensen Rebuttal, ¶ 42; White Op., ¶ 55; (the POSITA standard proposed by BT's experts) - Dobson Op., ¶ 61; Dobson Reply, ¶ 10; Greenspun Op., ¶ 55.

3

39:3.  The one expert in this case who clearly does not meet those qualifications is Dr. Dobson.

Dobson Op. Brief, pp. 7-9.

### B.  Mr. White's Qualifications and Invalidity Opinions

Mr. White has a B.S. in electrical engineering and a M.S. in computer engineering.

White Tr. 6:19-7:3.  He has 30 years of experience in the design and implementation of

distributed networks.  White Op., ¶ 8.  He has focused on distributed networks for nearly the

entirety of his career, having worked on both the lowest level networking protocols to the most

advanced distributed applications.  White Tr. 90:4-24.  Given his background and experience,

Mr. White is qualified to discuss the integration of different databases, including GIS servers.

*See, e.g.*, White Tr. 158:10-160:16.

Mr. White opines that a number of prior art references anticipate and render obvious the

'598 patent.  Specifically, he opines that Darcie, Takagi and Choy anticipate and render obvious

the asserted claims of the '598 patent.  Mr. White's reports provide the basis for his conclusions

that Darcie, Takagi and Choy anticipate and render obvious the asserted claims of the '598

patent.  White Op.,  pp. 32-66 (Darcie); 66-92 (Takagi); 174-199 (Choy); White Reply, pp. 23-40

(Darcie); 40-56 (Takagi); 91-102 (Choy).  His opinions are based on his standing as a POSITA

to the '598 patent under either party's POSITA standard.  White Tr. 55:21-24; *see also* Dobson

Op., ¶ 61; Greenspun Op., ¶ 55.

### C.  Relevant Prior Art References: Darcie, Takagi and Choy

Darcie discloses a distributed network of data storage devices that provides mapping data

to users.  Darcie, 1:8-11, 3:8-11, 12:12-45, Fig. 1; White Op., ¶¶ 92-100.  Darcie is pertinent to

the '598 patent because it allows for the distributed storage and retrieval of geographic

information, typically in the form of map tiles, based on a requested location or geographical

4

scope. *Id.* One of the embodiments disclosed by Darcie makes use of GIS systems, but Darcie is not limited to such embodiments. *See* Darcie, 4:40-5:20.

Takagi discloses a system for displaying map-based information obtained from a distributed network of servers. *See, e.g.*, Takagi, 1:5-8; White Op., ¶¶ 117-121. Takagi is pertinent to the '598 patent because it describes a network of servers containing data structures where location-based information is stored and retrieved from location-specific data structures. *Id.* at 1:61-2:15. Takagi provides a manner of integrating information from different servers. *See, e.g.*, Takagi, 1:61-2:15, 5:6-6:6, 6:56-8:41; White Reply, ¶¶ 107-108.

Choy discloses a system allowing drivers to receive pertinent travel information. *See, e.g.*, Choy, p. 337; White Op., ¶¶ 200-203. Choy is pertinent to the '598 patent because it relies on a distributed network of data storage devices that allow for the storage and retrieval of location-based information. *Id.* This system may be implemented through a network of servers collectively housing the geographic information necessary to provide Choy's functionality. *Id.*

## IV.    LEGAL STANDARDS FOR ADMISSIBILITY OF EXPERT TESTIMONY

Pursuant to Federal Rule of Evidence 702, expert testimony is admissible when it will assist the trier of fact in determining the facts at issue or understanding the subject matter at hand. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993). Under *Daubert*, the district court performs a gatekeeping function, determining the admissibility of expert testimony based on reliability and relevance. *Daubert*, 509 U.S. at 597. The Third Circuit has interpreted Rule 702 to impose three requirements: "(1) the proffered witness must be an expert; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." *Jaasma v. Shell Oil Co.*,

412 F. 3d 501, 513 (3d Cir. 2005); *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997).

Generally, the admissibility of expert testimony is governed by a liberal standard. *Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F. 3d 777, 780-81 (3d Cir. 1996) ("Rule 702 . . . has a liberal policy of admissibility.") (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994)).  Although Rule 702 does not explicitly require a specific level of expertise, in suits alleging patent invalidity or infringement, an expert must be at least a person of ordinary skill in the art of the patent.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005); *Sundance, Inc. v. Demonte Fabricating Ltd.*, 550 F.3d 1356, 1360, 1363, fn. 3 (Fed. Cir. 2008) ("A witness possessing merely ordinary skill [in the art] will often be qualified to present expert testimony both in patent trials and more generally.")

Expert testimony is admissible "so long as the *process or technique* [as opposed to the conclusion] the expert used in formulating the opinion is reliable." *In re TMI Litig.*, 193 F.3d 613, 664 (Fed. Cir. 1999) (emphasis in original) (internal citations omitted); *In re Paoli R.R. Yard Litig.*, 35 F.3d at 742 ("[T]he expert must have 'good grounds' for his or her belief.")  The level of an expert's experience may "affect the reliability of the expert's opinions." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 741.  The level of expertise is but one factor the court must consider when determining reliability.  *Id.* at 742 ("We now make clear that a district court should take into account all of the factors listed by either *Daubert* or *Downing* as well as any others that are relevant.")   Further, "[i]f the expert meets liberal minimum qualifications, then the level of the expert's expertise goes to credibility and weight, not admissibility." *Kannankeril*, 128 F.3d at 809.

## V.     ARGUMENT

BT's argument that Mr. White lacks the background to opine on Darcie, Takagi and Choy relies on a faulty understanding of the law and a mischaracterization of the transcript of Mr. White's deposition.  The proper inquiry into obviousness and other validity issues examines the level and skill of a POSITA of the '598 patent, the patent-in-suit.  *See, e.g.*, *Sundance*, 550 F.3d at 1363-65, fn. 3.  Moreover, prior art is reviewed and considered for what it teaches to such a POSITA.  *See, e.g.*, *id.*; *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1744-45 (2007) (determining whether a combination of references rendered the patent invalid based on what those references disclosed to a POSITA).  Mr. White is qualified to testify on the invalidity of the '598 patent because his thirty years designing and implementing distributed systems more than meets the requirements for a POSITA for the '598 patent.  Moreover, Mr. White need not have specialized knowledge in GIS systems for him to understand and explain the disclosures associated with Darcie, Takagi and Choy.

### A.     BT Misstates the Qualifications Necessary for an Invalidity Expert

BT's motion to exclude the testimony of Mr. White is premised on an incomplete and inaccurate understanding of the qualification prong of Fed. R. Evid. 702.  BT appears to assert that in order for an invalidity expert to be qualified, he or she must be an expert in all of the potential topics and fields that may be referenced in any of the prior art rather than in the area of the alleged invention.  White Op. Brief, pp. 1-2, 7-8.  BT's standard for expert qualification is not only impracticable, it is wrong.

An invalidity expert should be qualified as a POSITA of the underlined asserted patent.  *See, e.g.*, *Phillips*, 415 F.3d at 1313; *Sundance*, 550 F.3d at 1363, fn. 3.  Any suggestion to the contrary runs afoul of the Third Circuit's "liberal" standard for expert qualifications and the Federal

Circuit's clear mandate that technical experts need only meet the POSITA standard of the asserted patent. *See, e.g.*, *Holbrook*, 80 F.3d at 780-81; *Sundance*, 550 F.3d at 1363 ("[O]ur opinion should not be read as suggesting that Rule 702 requires a witness to possess something more than ordinary skill in the art to testify as an expert.  A witness possessing merely ordinary skill will often be qualified to present expert testimony both in patent trials and more generally.")

Further, the case law cited by BT does not support its argument that a technical expert must have expertise in any matter that a particular piece of prior art touches on rather than the field of the claimed subject matter of the '598 patent.  *See* White Op. Brief, p. 9 (citing *Sun-Mate Corp. v. Koolatron Corp.,* 2011 U.S. Dist. LEXIS 84726, *18-19 (C.D. Cal. Aug. 1, 2011); *Advanced Med. Optics, Inc. v. Alcon Inc.*, 2005 U.S. Dist. LEXIS 5803, *9 (D. Del. 2005)).  In *Sun-Mate Corp.*, the expert was excluded because she failed to demonstrate a basis for her alleged expertise, not because she was unqualified for some aspect of some part of a disclosure in a prior art reference.  2011 U.S. Dist. LEXIS 84726  at *17 ("Without a copy of Ms. Cronan's resume, Ms. Cronan's declaration standing alone provides very little detail as to her professional experience or expertise.").  In *Advanced Med. Optics, Inc.*, the technical expert was precluded from giving testimony on sales and marketing based on the expert's reliability and the lack of pertinence to the dispute, not the expert's credentials or topics touched by any prior art.  2005 Dist. LEXIS 5803 at *13, *18.

Instead, the law is clear: the relevant inquiry for invalidity is what a prior art reference teaches or discloses to a POSITA in the field of the alleged invention (here, the '598 patent). *See, e.g.*, *Sundance*, 550 F.3d at 1363-65, fn. 3; *KSR Int'l Co.*, 127 S. Ct. at 1744-45.  Thus, an expert is qualified if they are at least a POSITA in the field of the alleged invention.  BT cannot

escape this basic principle. Its motion should be denied for misapplying the clear standard for who qualifies as an expert.

### B.      Neither Party Requires a POSITA to Have Experience in GIS Systems

Neither party has <u>ever</u> advocated that GIS or mapping expertise is necessary for a POSITA of the '598 patent.  *See, e.g.*, Dobson Op., ¶ 61; Greenspun Op., ¶ 55; Jensen Rebuttal, ¶ 42; White Reply, ¶ 11; White Tr. 158:10-159:7.  Further, both of BT's purported '598 patent experts acknowledged that mapping is never described the '598 patent.  *See, e.g.*, '598 patent; Dobson Tr. 72:6-75:17; Greenspun Tr. 702:20-704:21.  The inventors of the '598 patent were computer scientists and there is no evidence that they had anything to do with GIS systems.  *See* Dobson Tr., 60:3-24.

At minimum, both parties agree that a POSITA would have had a background in computer science or a related field.  *See, e.g.*, Dobson Op., ¶ 61; Greenspun Op., ¶ 55; Jensen Rebuttal, ¶ 42; White Reply, ¶ 11; White Tr. 36:3-39:3.

Despite this clear agreement, BT repeatedly suggests that experience in map-based directory systems and GIS systems is required for an expert on the invalidity of the '598 patent. *See* White Op. Brief, pp. 7-8 ("Nothing in Mr. White's training or experience qualifies him to opine on map-based directory systems or GIS-based system….  Mr. White, therefore, lacks the experience and 'specialized knowledge' required of an expert witness by Fed. R. Evid. 702."). BT identifies no authority for this proposition, nor does BT ever mention the POSITA standard for the '598 patent in its Opening Brief.

### C.      BT's GIS Requirement is Logically Flawed

Under BT's argument, an expert would need to be knowledgeable in all the fields touched on by <u>every single potential prior art reference</u> in order to testify on the validity of the

asserted patent.[4]  BT's position is internally inconsistent.  On the one hand, BT concedes that Mr. White is a POSITA who is qualified and reliable with regard to the other six references discussed in Mr. White's reports, but, on the other hand, Mr. White is not qualified to testify about Darcie, Takagi and Choy.  *See* White Op. Brief, pp. 1-2, fn. 2.  BT's argument attempts to create a second inquiry as to an expert's credentials, namely whether an expert has particularized knowledge for each and every area that each prior art reference touches upon.  The problem with BT's argument is readily demonstrated by the following example.  Under BT's theory, in a case (as here) where the patent at issue concerned distributed networks of data storage devices, in order to explain a prior art reference that used similar computer structures, but stored financial data, an invalidity expert would need to have expertise in finance, in addition to expertise in information storage.

BT cannot have it both ways – either Mr. White meets the POSITA standard and is qualified to testify on <u>all</u> of the prior art references in the relevant field of the '598 patent, or Mr. White, and BT's own purported '598 experts, Dr. Greenspun and Dr. Dobson, are not qualified to serve as experts on the '598 patent because they also lack experience in certain prior art references.[5]  Mr. White's testimony should be admitted.

**D.     Mr. White Is a Person of Extraordinary Skill in the Art and Therefore Is Qualified to Testify**

Under the appropriate legal standard, Mr. White is a POSITA to the '598 patent and is more than sufficiently qualified to testify as an expert witness on the invalidity of the '598

---

[4] Moreover, under BT's theory, BT's second invalidity expert, Dr. Philip S. Greenspun ("Dr. Greenspun") would also be excluded as he was not an "expert" on GIS systems.  *See, e.g.*, Greenspun Tr. 701:13-702:8.

[5] Dr. Greenspun is not an expert in GIS systems and Dr. Dobson is not an expert in distributed networks.  *See* Greenspun Tr. 701:13-702:8; Dobson Op. Brief, pp. 7-9.

patent.  Mr. White meets either party's POSITA standard.  Mr. White has a bachelor's degree in electrical engineering and a master's degree in computer engineering.  White Tr. 6:19-7:3.  Mr. White also has thirty years of experience in designing and implementing distributed networks of data storage devices.  White Op., ¶ 8.  BT acknowledges that Mr. White is a POSITA of the '598 patent and does not challenge Mr. White on that basis.  *See* White Op. Brief, pp. 1-2, fn. 2.  BT misapplies the law to craft a new standard that inflates the significance of some prior art references' use of GIS, seemingly in the hope that this will somehow qualify Dr. Dobson as a POSITA.  BT's arguments cannot change that Mr. White is more than qualified as a POSITA in the field of the '598 patent and Dr. Dobson is not.

### E.     **BT Mischaracterizes Mr. White's Opinions on GIS Systems**

Even if BT's assertions that Mr. White required experience with GIS systems to testify as an invalidity expert were true, BT repeatedly misstates and often mischaracterizes Mr. White's opinions regarding Darcie, Takagi and Choy.

BT provides excerpts out of context, in a misguided attempt to highlight Mr. White's purported inexperience in mapping products or GIS systems.  *See* White Op. Brief, pp. 3-5. Specifically, when asked if Mr. White believes such experience was relevant, he explained:

> 10 Q. Mr. White, having no experience in
> 11 GIS, do you think your [sic] qualified to testify in
> 12 connection to how the Takagi invention works,
> 13 which uses GIS?
> 14 A. I do. With respect to its
> 15 relationship to the '598 invention I do, in which
> 16 there's no aspect of map making for example.
> 17 Q. I'm not talking about in connection
> 18 with the '598 patent. I'm -- I'm asking you in
> 19 connection with the Takagi reference --
> 20 A. Yes.
> 21 Q. -- do you think you're qualified to
> 22 testify in connection with the workings of the
> 23 Takagi patent even though you have no experience
> 24 in GIS?

25 A. I do.

White Tr. 158:10-25.

When asked to explain why such experience is not necessary, Mr. White responded:

> "This in -- is not an invention about the GIS systems themselves. It's about how you integrate them in a way that solves certain problems about providing uniform access to those individual systems from some client device, so that's why I think I'm qualified to -- to read this and to understand it and to evaluate it in terms of its relationship to the -- to the '598 patent."

> *Id.* at 159:19-160:3; *see also* 163:12-166:9.

In claiming that Mr. White was unfamiliar with GIS systems, BT's motion emphasizes four excerpts from Mr. White's testimony, but BT provides no explanation as to why these features of GIS have any bearing on the subject matter of the claimed invention of the '598 patent.  *See* White Op. Brief, pp. 3-5.  BT ignores that Mr. White's testimony and reports clearly demonstrate that he understood how Darcie, Takagi and Choy relate to the '598 patent.  For example, Mr. White provided 52 pages of expert opinions on the functionality and system disclosed in Darcie, and how the disclosure of Darcie is pertinent to and discloses the claimed invention of the '598 patent.  *See* White Op. pp. 32-66; White Reply, pp. 23-40.  Mr. White also performed the same thorough analysis for Takagi and Choy.  *See* (Takagi) - White Op., pp. 66-92; White Reply, pp. 40-56; (Choy) - White Op., pp. 174-199; White Reply, pp. 91-102.

Further, BT misunderstands Mr. White's opinion and discussion of the inherent disclosures of certain claim elements, instead framing two such excerpts as "examples" of how Mr. White's opinions are based on "mere speculation."[6]  See White Op. Brief, pp. 8-9.  First, BT

---

[6] Allegations of "speculation" are more appropriately addressed by the "reliability" prong of Fed. R. of Evid. 702, but Google responds to BT's allegations in the order set forth in BT's Opening Brief. *See* White Op. Brief, p. 8.

alleges that Mr. White did not know how the size of a viewpoint (or user interface)[7] is used to retrieve map tiles. *Id.* at p. 8. BT, however, specifically excludes Mr. White's explanation of how the size of a viewpoint is used by Darcie to retrieve tiles, even though it is directly after and preceding the two cited excerpts provided in BT's Opening Brief. *See* White Tr., 122:5-123:15; White Op. Brief, p. 8. Mr. White also answers this question on several other occasions. *See, e.g.*, White Tr. 124:20-125:9, 127:15-129:3. Second, BT alleges that Mr. White did not know if a "geographic search server [in Takagi] delineates an area for which the geographic information server is responsible…." White Op. Brief, p. 9. Once again, BT provides selected portions of Mr. White's responses to make his answers look incomplete. In fact, in his deposition, Mr. White provided a detailed and substantive response to BT's question that addressed how a POSITA in the field would understand the Takagi disclosure. *See, e.g.*, White Tr. 163:12-166:9, 161:4-162:13.

Lastly, even if BT's allegations regarding Mr. White's experience with GIS systems had merit, which they do not, BT's challenges would go to the weight rather than the admissibility of his testimony. *Kannankeril*, 128 F.3d at 809; *Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*, 430 F. Supp. 2d 346, 364 (D. Del. 2006) ("Cryovac asserts that the documents that Dr. Mount attempted to rely on do not support his opinion, and that his opinion should thus be excluded. Again, however, this argument goes to the weight that should be given to his expert testimony, not its admissibility.") Mr. White is clearly a person of extraordinary skill in the art to the '598 patent, and although BT may disagree with his opinions, his analysis is thorough and

---

[7] The "Viewpoint" in Darcie is the user interface where Map data, typically in the form of map tiles, are presented to the user via a web browser or software. *See, e.g.*, Darcie 12:41-13:9; White Op., ¶¶ 99-100.

documented – the appropriate recourse for BT's challenges is to cross-examine Mr. White at trial.

## VI.    CONCLUSION

For the reasons set forth above, Google respectfully requests that the Court deny BT's Motion to Exclude Mr. White's invalidity testimony on Darcie, Takagi and Choy.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Paul Saindon*

Jack B. Blumenfeld (#1014)
Paul Saindon (#5110)
Eleanor Tennyson (#5812)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
psaindon@mnat.com
etennyson@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

Dimitrios T. Drivas
Kevin X. McGann
Jeffrey J. Oelke
John P. Scheibeler
Robert E. Counihan
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY  10036
(212) 819-8200

December 2, 2013
7817376

14

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on December 9 , 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

     I further certify that I caused copies of the foregoing document to be served on December 9, 2013, upon the following in the manner indicated:

Melanie K. Sharp, Esquire                             *VIA ELECTRONIC MAIL*
Monte T. Squire, Esquire
Robert M. Vrana, Esquire
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for British Telecommunications plc*

James H. Shalek, Esquire                              *VIA ELECTRONIC MAIL*
Robert Mayer, Esquire
Joon Yoon, Esquire
Fabio Tarud, Esquire
Jonathan M. Sharret, Esquire
Elias Schilowitz, Esquire
Alan Federbush, Esquire
John C. Stellabotte, Esquire
Nolan M. Goldberg, Esquire
Ryan Pifer, Esquire
Proskauer Rose LLP
Eleven Times Square
New York, NY  10036-8299
*Attorneys for British Telecommunications plc*

Justin J. Daniels, Esquire                              *VIA ELECTRONIC MAIL*
Sean D. Whaley, Esquire
Proskauer Rose LLP
One International Place
Boston, MA  02110-2600
*Attorneys for British Telecommunications plc*

Michael W. McDermott, Esquire                              *VIA ELECTRONIC MAIL*
David B. Anthony, Esquire
BERGER HARRIS, LLC
One Commerce Center, 3rd Floor
1201 North Orange Street
Wilmington, DE  19801
*Attorneys for British Telecommunications plc*


/s/ Paul Saindon
Paul Saindon (#5110)