IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRITISH TELECOMMUNICATIONS PLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 11-1249 (LPS) |
| | ) | |
| v. | ) | **REDACTED –** |
| | ) | **PUBLIC VERSION** |
| GOOGLE INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT GOOGLE INC.'S REPLY BRIEF IN RESPONSE TO PLAINTIFF
BRITISH TELECOMMUNICATIONS PLC'S ANSWERING BRIEF IN
OPPOSITION TO GOOGLE'S MOTIONS FOR SUMMARY JUDGMENT**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Paul Saindon (#5110)
Eleanor Tennyson (#5812)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
psaindon@mnat.com
etennyson@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

Dimitrios T. Drivas
Kevin X. McGann
Jeffrey J. Oelke
John P. Scheibeler
Robert E. Counihan
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY  10036
(212) 819-8200

Original Filing Date:  December 20, 2013
Redacted Filing Date:  December 27, 2013

## TABLE OF CONTENTS

I.    Introduction and Summary of Argument ............................................................1

II.   The '040 Accused Products Do Not Infringe the '040 Patent ..............................1

      A.   ███████████████████████████████████ ..................1

           1.   ███████████████████ ..................2

           2.   █████████████ ..................3

           3.   ████████████████ ..................4

           4.   ████████████████ ..................4

           5.   BT's Attorney-Created Search Results, Unsupported Statements of
                Fact, and Citation to Large Swaths From its Experts' Reports Fall
                Short of Evidence of Infringement ............................................................4

      B.   BT's Effort to Recast the Prosecution Disclaimer Should be Rejected ..................5

           1.   BT, not Google, Seeks a New Interpretation Never Argued During
                Claim Construction or Prosecution ............................................................5

           2.   Comprising Language in the Claim Preamble Cannot be Used to
                Alter Specific Claim Step Limitations or BT's Prosecution
                Disclaimer ...................................................................................................7

           3.   The Court's Construction Does Not Read Out the Fig. 4
                Embodiment Because "Logging in" Is not a User Request ......................7

           4.   BT's "Proximate Causality" Argument Is a Red Herring ........................8

           5.   "Push" and "Pull" Are Not New Concepts and Do Not Alter the
                Court's Construction in Any Way................................................................9

      C.   Google Now Does Not Meet the "Shortlist" Limitation .......................................9

III.  Google Does Not Infringe The '079 Patent .........................................................10

      A.   The '079 Accused Products Do Not Use a "Readily-Accessible Storage" ...........10

           1.   BT Cannot Show That The "Information Source" Limitations are
                Met by the '079 Accused Products...........................................................10

           2.   Google Is Not Re-litigating A Claim Construction Issue ........................11

## TABLE OF CONTENTS, cont'd

3.    Content Stored in Google's Cache Does Not "Originate at a Remote ISP"..........................................................................12

B.    The Accused '079 Products Do Not Store "Customer-Associated Lists" ...........12

1.    The Asserted Claims of the '079 Patent Recite Separate Storage and Retrieval of Customer-Associated Lists and Impose A Specific Sequence ........................................................................13

2.    The '079 Accused Products Assemble a User Library on the Fly and Do Not Store or Retrieve Customer-Associated Lists from the Corpora ........................................................................15

IV.    Android OS Does Not Infringe The '309 Patent............................................16

A.    Android Does Not Update Data "Continuously on a Point-By-Point Basis" and There are No Material Facts in Dispute.........................................16

1.    Android Does Not Update Data "Continuously on a Point-by-Point Basis" and There are No Materials Facts in Dispute................................17

2.    "Updating … On a Point-by-Point Continuous Basis" Requires Updating At Least When a User Crosses Cell Boundaries.......................18

B.    The "Responsive To" Limitation is Not Met Due to BT's Failure to Respond to Google's Argument And Clear Prosecution Disclaimer...................18

1.    BT Does Not Dispute that Certain Accused Android Features Do Not Meet the Requirement for "Separately Selectable Options".............18

2.    Prosecution Statements Defining the '309 Invention Require that Updated Data is Made Available Before a User Makes a Selection ........19

V.    Conclusion ........................................................................20

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ..........................................................................................................1

*Atofina v. Great Lakes Chem. Corp.*,
    441 F.3d 991 (Fed. Cir. 2006)..........................................................................................6

*BASF Agro B.V. v. Makhteshim Agan N. Am.*,
    519 Fed. Appx. 1008 (Fed. Cir. 2013) .............................................................................7

*Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*,
    289 F.3d 801 (Fed. Cir. 2002).........................................................................................19

*Chem. Eng'g Corp. v. Essef Indus., Inc.*,
    795 F.2d 1565 (Fed. Cir. 1986).....................................................................................2, 12

*Chimie v. PPG Indus., Inc.*,
    402 F.3d 1371 (2005) ........................................................................................................6

*Cooper Notification, Inc. v. Twitter, Inc. et al.*,
    867 F. Supp. 2d 485 (D. Del. 2012) ................................................................................19

*Dippin' Dots, Inc. v. Mosey*,
    476 F.3d 1337 (Fed. Cir. 2007)........................................................................................7

*Exigent Tech., Inc. v. Atrana Solutions, Inc.*,
    442 F.3d 1301 (Fed Cir. 2006)................................................................................2, 12, 15

*Golden Bridge Tech. v. Apple Inc.*,
    937 F. Supp. 2d 504 (D. Del. 2013) .............................................................................5, 12

*Mantech Envtl. Corp. v. Hudson Envtly. Servs., Inc.*,
    152 F.3d 1368 (Fed. Cir. 1998).......................................................................................13

*Matsushita Elect. Ind. Co. Ltd v. Zenith Radio Corp.*,
    474 U.S. 574 (1986) ......................................................................................................1, 2

*N. Am. Container, Inc. v. Plastipak Packaging, Inc.*,
    415 F.3d 1335 (Fed. Cir. 2005).....................................................................................8, 20

*Norian Corp. v. Stryker Corp.*,
    432 F.3d 1356 (Fed. Cir. 2005).........................................................................................6

*Novartis Corp. v. Ben Venue Labs. Inc.*,
    271 F.3d 1043 (Fed. Cir. 2001).........................................................................................2

## <u>TABLE OF AUTHORITIES, cont'd</u>

*Renishaw plc v. Marposs Societa' Per Azioni*,
    158 F.3d 1243 (Fed. Cir. 1998)................................................................................18

*Spectrum Int'l, Inc. v. Sterilite Corp.*,
    164 F.3d 1372 (Fed. Cir. 1998)................................................................................7

*UShip Intellectual Props. v. United States*,
    714 F.3d 1311 (Fed. Cir. 2013)................................................................................8, 20

## I.      Introduction and  Summary of Argument

BT has presented no evidence showing a genuine dispute of material fact as to whether the Accused Products meet the specific limitations in the '040, '079, and '309 patent claims raised by Google's motion.   BT argues issues of claim construction that are questions of law. BT's purported disputed issues concern facts that are not material and unsupported by evidence. The Court should grant summary judgment of noninfringement.   Summary judgment of noninfringement of the '040 patent is also proper for (i) Google Maps, Google+, Google+Local, Google Places, Google Places API, and Google Maps Navigation because BT's Answering Brief does not address these products, and (ii) Admob, Google Buzz, Chrome Web Store and Google Shopper/Shopping because BT states it is "dropping" these products.

## II.     The '040 Accused Products Do Not Infringe the '040 Patent

### A.     ███████████████████████████████████████████

BT's irrelevant evidence and erroneous interpretations of testimony and documents fail to raise a *genuine* dispute of *material* fact precluding summary judgment of noninfringement.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elect. Ind. Co. Ltd v. Zenith Radio Corp.*, 474 U.S. 574, 585-587 (1986).  A dispute is not material if it does not affect the outcome and is not genuine if it is unsupported by the record evidence; mere attorney argument, attorney manufactured "evidence" or unsupported expert opinion cannot defeat Google's motion for summary judgment. *Matsushita*, 474 U.S. at 586-87.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████     ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Thus, the '040 Accused Products fall within BT's prosecution disclaimer over Ben-Yehezkel. Summary judgment of noninfringement is proper because BT cannot show that the '040 Accused Products meet the "on the basis of" limitation of the '040 patent claims. *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1308 (Fed Cir. 2006).

      1.    ██████████████████████ ██████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████ ██████████████████████████████  BT's argument that a user has not requested a specific location-targeted list of advertisements is irrelevant and incorrect. *See* BT Ans. at 6; Google Op. at 13-14. BT never made that argument during prosecution and the Court's construction places no such limit on the disclaimed user request. D.I. 235 at 15; *see also* Section II.B.1 *infra*.

      It is also undisputed that users expect to see ads in response to a search. Google Op. at 14. The exhibit BT relies upon specifically informs users that "Ads enable free web service and content." *See* D.I. 309-1, Goldberg Ex. B, at 2. The unsupported statements BT cites from Dr. Greenspun's expert report, many of which do not even concern ads (e.g., D.I. 310, Greenspun Ex. B, at Ex. D-2), do not create a genuine dispute of material fact. *Matsushita*, 474 U.S. at 586-87; *see also Novartis Corp. v. Ben Venue Labs. Inc.*, 271 F.3d 1043, 1054 (Fed. Cir. 2001); *Chem. Eng'g Corp. v. Essef Indus., Inc.*, 795 F.2d 1565, 1571-1572 (Fed. Cir. 1986).

---

[1] For purposes of this motion Search Ads and AFS function the same. *See* BT Ans. at 11.

[2] "Counihan Ex." refers to exhibits to the declaration of Robert E. Counihan submitted herewith.

BT has not created a genuine dispute of material fact based on the flow diagram in Sharret Ex. F (D.I. 311-3 at Goog_BT_192725-728).[3]  BT Ans. at 9-10 & 19.  BT itself states, "the parties agree that some user action (*i.e.*, entering a search query) started the whole process."  BT Ans. at 19.  That Google may perform certain steps to respond to the user request (such as identifying subjects or terms "similar" to the query) is irrelevant.  ██████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████

BT asserts that its construction does not rely on "user intent."  BT Ans. at 14.  Yet, BT's statement, "[i]f the system decides to provide something entirely different than what the user requested…" relies on exactly that premise.  *Id.*  BT shows no evidence supporting its position.

2.  ████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████  This falls within BT's prosecution disclaimer.

---

[3] BT's reliance on this document is also misplaced because the document explains how ads works "is beyond the scope of the document."  *Id.* at Goog_BT_192728.

3.   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

BT's opposition refers to a search for restaurants (*see* D.I. 309-1, Goldberg Ex. C)[4] and

states that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ BT

Ans. at 7.  None of the sixty-eight cited paragraphs in Wolfson's report supports the proposition

that Google "decides" anything. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

4.   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

BT's statements about Google Now do not address the description of Now or Offers in

Google's Opening Brief.  BT Ans. at 22; Google Op. at 9 & 15.  It is undisputed that Google

Now users initially designate cards to be requested when the application is activated.  *See* Google

Op. at 9. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

5.   BT's Attorney-Created Search Results, Unsupported Statements of Fact, and Citation to Large Swaths From its Experts' Reports Fall Short of Evidence of Infringement

Despite receiving millions of Google's documents and inspecting voluminous Google

source code files, BT's answering brief relies on page displays for searches BT's attorney ran on

Google.com for "yoga videos" or "restaurants."  From these displays, BT concludes that Google

---

[4] BT's assertion that the search results on the left-side of the page in Goldberg Decl. Ex. C provide a shortlist of results targeted to New York is untimely and was not in BT's Expert Reports.  *See* D.I. 310, Greenspun Ex. B, at Exs. D-1 & D-2.  BT should be precluded from relying on those results.

"decided" to generate location-targeted results.  *See, e.g.*, BT Ans. at 6, 7 & 9.  Reliance on output results, such as BT's page displays, is insufficient to show a defendant has practiced a method step.  *See Golden Bridge Tech. v. Apple Inc.*, 937 F. Supp. 2d 504 (D. Del. 2013).  In *Golden Bridge*, the court granted summary judgment because plaintiff's expert testimony merely showing the outcome of a process was insufficient to show that the claimed process was performed.  *Id.* at 515.  BT's reliance on output results to conclude that the '040 Accused Products meet the method step including the "on the basis of" limitation is equally insufficient.

BT also asserts "facts" with no support from the record (BT Ans. at 4-5), or cites wide swaths of the expert reports (BT Ans. at 4, 6, 7, 8 & 20).  These assertions fall short of showing that the critical "on the basis of" limitation is met.  BT's attorney-produced page displays actually demonstrate noninfringement.  Exhibit A to the Goldberg Declaration (D.I. 309-1) is a page displayed in response to a search on Google.com for "yoga videos" by BT's attorney in New York, NY.  Contrary to BTs' argument, the subject matter of the ads is directly responsive to the user search request.  The first ad displayed is an ad for a fitness video (including yoga) from amazon.com **(that is also not related to the user's New York location)**.  The same can be said for the second ad (online yoga videos) and others in the display.  Thus, BT's "evidence" shows that the accused Google products do not meet the "on the basis" limitation because they are specifically responsive to a user request, and do not meet the "shortlist" limitation because the ads are not filtered to exclude items related to other locations.

### B.   BT's Effort to Recast the Prosecution Disclaimer Should be Rejected

#### 1.   BT, not Google, Seeks a New Interpretation Never Argued During Claim Construction or Prosecution

In its opposition, BT asserts that a "user request" means "a request by the user for a location-based service based upon a location specified in the request."  *See* BT Ans. at 12.  BT's prosecution disclaimer over Ben-Yehezkel was nowhere near as narrow as BT now suggests and

BT never raised this new interpretation during briefing or the claim construction hearing.  *See* D.I. 112 at 17-18; D.I. 125 at 7-9; D.I. 202 at 80-84, 89-90.  Further, BT's attempt to limit that disclaimer based upon how BT now describes Ben-Yehezkel (BT Ans. at 12-14), rather than the statements BT made during prosecution is prohibited.  *See e.g.*, *Norian Corp. v. Stryker Corp.*, 432 F.3d 1356, 1361-62 (Fed. Cir. 2005).

The "user request" term arose when BT sought to distinguish the '040 claims (where the information was provided to the user "on the basis of tracking information") from Ben-Yehezkel, which only received location information as a result of a user request.  During prosecution, BT never stated that Ben-Yehezkel concerned a "user request for a location-based service."  Nor did BT mention what the Ben-Yehezkel user was requesting.  Thus, BT distinguished Ben-Yehezkel because Ben-Yehezkel's information service message and selection of information sources are generated "in response to a [user] request message" sent along with a location signal.  *See* D.I. 235 at 15, citing D.I. 115 (Ex. C) at Goog_BT_6095-6096.  BT's actual disclaimer controls here, not what BT now contends it might have argued.  *See Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (2005); *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 997-98 (Fed. Cir. 2006) (citing *Norian Corp.*, 432 F.3d at 1361-62).

BT's present characterization that Ben-Yehezkel concerned a "location specified in the request" was never made during prosecution and is inaccurate.  In Ben-Yehezkel, a location signal was sent along with the user request; the request itself did not specify a location.  *See* D.I. 306-3, Miniovich Ex. N, at 7:45-51 & 7:56-57.  Also, BT had already given up systems that respond to "user-specified locations" earlier in prosecution when BT canceled original claim 18.  *See* Counihan Ex. B at Goog_BT_5296-97 and Goog_BT_5465.

2.     Comprising Language in the Claim Preamble Cannot be Used to Alter
Specific Claim Step Limitations or BT's Prosecution Disclaimer

BT argues that "comprising" in the preamble transition supports BT's newly recast interpretation of the "on the basis of" limitation.  BT Ans. at 13.  "Comprising" does not allow a patentee to reach into every claim limitation to render every word therein open-ended.  *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1380 (Fed. Cir. 1998); *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1343 (Fed. Cir. 2007).  Moreover, the open-ended nature of "comprising" cannot eliminate the effect of BT's disclaimer during prosecution.  *See BASF Agro B.V. v. Makhteshim Agan N. Am.*, 519 Fed. Appx. 1008 (Fed. Cir. 2013).

BT disclaimed the instance where a user request triggers generating a shortlist.  Yet, like the patentee in *BASF*, BT now argues that, despite its disclaimer, the "comprising" transition permits reading the claims on the Accused Products even if the shortlist generation is in response to a user request.  The Federal Circuit rejected this argument: "[T]he claims' open-ended language does not moot [patentee's] disclaimer."  *BASF*, 519 Fed. Appx. at 1016.  In essence, BT argues that the user request in the Accused Products evaporates after a lapse of time or some intervening processing, and that Google's response to the request transforms into a response to tracking information for said user.  BT cannot use the word "comprising" to ignore that BT disclaimed information generated as a result of a user request.

3.     The Court's Construction Does Not Read Out the Fig. 4 Embodiment
Because "Logging in" Is Not a User Request

The Court's construction, excluding a user request triggering the process for providing a response, does not read out the embodiment of Fig. 4 (BT Ans. at 16-17).  As Google's expert, Mr. McGoveran, and BT's expert, Dr. Greenspun, agreed, a user logging in on a device does not constitute a "user request."  D.I. 306-3, Miniovich Ex. J (Greenspun Tr.), at 64:11-14, 151:7-152:2; D.I. 306-4, Miniovich Ex. Z (McGoveran Tr.), at 150:5-22.  Mr. McGoveran testified that

"it is a logging process, so the system logs whether or not a user exists or not… It is not a request.  You are not requesting anything." D.I. 306-4, Miniovich Ex. Z (McGoveran Tr.), at 150:17-21.  In addition, the '040 patent shows that a user logging onto a terminal does not constitute a user request.  In Fig. 4, when a user logs onto a terminal, the system location updater automatically provides a location update message.  *See* D.I. 273-1, Padro Ex. A ("'040"), at 8:14-18.  The user does not make any request; the user has only logged on at the terminal.  *See* D.I. 306-4, Miniovich Ex. Z (McGoveran Tr.), at 150:5-152:7.  Thus, the Court's construction does not exclude a disclosed embodiment.

Moreover, even where a specification discloses an embodiment, a disclaimer such as BT has made here may properly result in "that embodiment not being covered by the claims." *UShip Intellectual Props. v. United States*, 714 F.3d 1311, 1316 (Fed. Cir. 2013); *see also N. Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1346 (Fed. Cir. 2005).  The Court need not go so far here because logging on is not a user request for anything.

4.     BT's "Proximate Causality" Argument Is a Red Herring

BT manufactures an argument that Google's application of "user request" extends beyond "proximate causality."  *See* BT Ans. at 15-16.  There is no proximate causality limitation in the Court's construction.  The Court explained that BT disclaimed "generation of information as a result of … a user request." (D.I. 235 at 15).  Whether Google performs certain intervening steps to process the user's request is irrelevant.  Further, BT's reliance on hypothetical constructs,[5] rather than pointing to the operation of the accused products, does not change the undisputed fact that, in each '040 Accused Product, no response is provided to the user absent a user request.  For this reason alone, BT's arguments should be rejected.

---

[5] BT's reliance on Mr. McGoveran's testimony that there could be decades between a request and a response is not relevant.  BT has not shown that any Accused Product operates in that fashion.

Moreover, BT selectively quotes out-of-context testimony from the deposition of Mr. McGoveran.  In one such passage that BT did not include in its quotes, Mr. McGoveran explains that BT has misstated his response regarding indirect input because he meant that the request could include things like preferences for a particular application that the user request was understood to include.  D.I. 311-1, Sharret Ex. B (McGoveran Tr.), at 141:5-142:5.  The remaining passages BT quotes, in addition to not describing accused products, are not relevant to determining whether the request qualifies as a user request that BT disclaimed.

> 5. "Push" and "Pull" Are Not New Concepts and Do Not Alter the Court's Construction in Any Way

BT takes issue with Google's use of "push" and "pull" to describe the different systems. Google has not changed any aspect of its claim construction position by using "push" and "pull." These terms describe the concepts at issue in vernacular that the experts use and understand. Even BT's expert Dr. Greenspun used the term "pull" to describe the system in Ben-Yehezkel. *See, e.g.,* D.I. 273-1, Padro Ex. O (Greenspun Tr.), at 192:15-25.  Google's position in claim construction remains unchanged.  In the '040 patent, generation of a shortlist is triggered as a result of the system receiving user location information, not a user request.

## C.   Google Now Does Not Meet the "Shortlist" Limitation

The issue is whether Google Now generates a filtered list that excludes items related to other locations.  *See* D.I. 235 at 12-13 (Court's construction of "shortlist").  BT relies on a single display to assert that "in certain instances" Google Now shows a single shortlist that excludes items related to other locations.  Here again, BT attempts to "prove" infringement by showing the output rather than focusing on the steps that generated the output.  As Google explained, and BT did not dispute, the user controls which cards are requested.  ███████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████  Thus, Google Now does not

operate by excluding items related to other locations.   BT's evidence does not overcome

Google's showing of noninfringement and the Court should grant summary judgment.

## III.    Google Does Not Infringe The '079 Patent

### A.    The '079 Accused Products Do Not Use a "Readily-Accessible Storage"

The '079 Asserted Claims all require retrieving an information item from an "information

source," which the Court construed to be either: (1) a remote ISP or (2) a readily-accessible

storage location of an information item originating at a remote ISP.  Google Op. at 18-19.  The

only material dispute is whether the '079 Accused Products literally meet the "readily-accessible

storage location of an information item originating at a remote ISP" requirement, which is based

on the disclosure of caching storage in the '079 patent.  *Id*. at 19 & 22.  ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████  ██████  ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████  Thus, summary judgment is proper.

#### 1.    BT Cannot Show That The "Information Source" Limitations are Met by the '079 Accused Products

As the Court explained, "originating at a remote ISP" means that the "SN accesses the

remote [ISP] databases, retrieves … the information items … and stores them in the caching

storage."  D.I. 235 at 11-12 citing '079, 5:44-50.  The only description of caching storage in the

'079 patent refers to monitoring customer profiles to produce a ranked list of the most popular

---

[6] ████████████████████████████████████████████████████

████████████████████████████████████████████████

items.  D.I. 273-1, Padro Ex. B ("'079"), at 5:40-43.  Items in this ranked list are retrieved from a remote ISP to store them in a cache at the service node.  *Id.* at 5:44-50.  BT's own expert agreed that the items stored in the "readily-accessible storage" of the Court's construction were items already listed in user profiles, which meant that at least one user had requested the item.  Google Op. at 23 (citing Greenspun Tr. 369:2-25).  BT never addresses its own expert's testimony.

Ignoring its expert, BT argues that customer profiles contain items not yet requested by a user.  Google Op. at 23; BT Ans. at 25 & 31.  BT cites nothing in the patent that describes either the customer profile or the caching storage containing an information item not previously requested by at least one user.  In fact, the passages BT cites indicate that the customer may have unlimited, repeated access to certain information items by subscribing to the item.  BT Ans. at 25 (citing '079, 10:1-3).  These items are the information items specified in the agreement with the node operator.  *Id.* (citing '079, 5:10-12).  Thus, BT's argument that the '079 patent discloses user profiles that contain items not previously requested by a user is wrong and unsupported.

████████████████████████████████████████████████████████

████████████████████████████████████████████████  *Id.*  These undisputed facts demonstrate that summary judgment is required because any purported disputes are not material.

### 2.    Google Is Not Re-litigating A Claim Construction Issue

BT's argument that Google seeks to re-litigate claim construction is misplaced.  BT Ans. at 30-31.  As explained above and in Google's opening brief, Google is merely applying the Court's construction that the readily-accessible storage (cache) must store information items retrieved from the remote ISP.  Consistent with BT's expert's testimony and the '079 patent disclosure, there can be no infringement ████████████████████████████

▮▮▮  The only part of Google's construction that the Court rejected is whether the storage must be short-term or temporary.  D.I. 235 at 12.  As Google's motion does not depend on whether the "readily-accessible storage" is short-term or temporary, BT's argument cannot raise a material dispute of fact that would preclude summary judgment.

       3.     Content Stored in Google's Cache Does Not "Originate at a Remote ISP"

BT does not dispute that any alleged "information items" cached by Google are retrieved from Google storage, not from a remote ISP.  Google Op. at 20 & 24.  In view of the Court's explanation that "originating at a remote ISP" in its construction means that the "SN accesses the remote [ISP] databases, retrieves … the information items … and stores them in the caching storage" (D.I. 235 at 11-12 citing '079, 5:44-50), ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**B.**    **The Accused '079 Products Do Not Store "Customer-Associated Lists"**

Google showed that the '079 Accused Products do not store or retrieve "customer-associated lists" as required by the asserted '079 claims.  Google Op. at 26-27.  In response, BT argues that Google stores such "customer-associated lists" but provides no evidence of the actual Google storage systems.  BT relies instead on a list assembled on the fly and presented to the user.  BT Ans. at 34-38; Google Op. at 21-22 & 26-28.  This is insufficient to show "storing" and "retrieving."  *Golden Bridge*, 937 F. Supp. 2d at 515.  Attorney argument and unsupported expert conclusions cannot create a ***genuine*** dispute of material fact**.**  *Chem. Eng'g Corp.*, 795 F.2d at 1571-1572.  BT's attempt to shift the burden to Google to explain what would meet the claim requirement to store customer-associated lists and retrieve a customer-associated list is improper.  BT Ans. at 35 & 39.  Google has met its burden for summary judgment by pointing to BT's lack

---

[7] Alternatively, if the claims were construed as broadly as BT asserts, they are invalid as lacking a supporting written description.  Google Op. at 25-26.

of evidence to support an element of its affirmative case.  *Exigent*, 442 F.3d at 1308.

                 1.      The Asserted Claims of the '079 Patent Recite Separate Storage and Retrieval of Customer-Associated Lists and Impose A Specific Sequence

BT argues that the only requirement for the customer-associated lists is that they allow a customer to readily manage their list by adding to or deleting from it. BT Ans. at 25-26.  BT's argument ignores the claim language that separately recites storing and retrieving of customer-associated lists.  Google Op. at 20-21.  The ability to manage or view the items is irrelevant to the recited storing and retrieving of "customer-associated lists."

The order of the claimed steps is dictated by the plain language of the claims, the interrelated nature of the steps, and the context of the patent.  *Id.* at 20-21 & 27 citing *Loral Fairchild Corp. v Sony Corp.*, 181 F.3d 1313, 1321-22 (Fed. Cir. 1999) and *Mantech Envtl. Corp. v. Hudson Envtly. Servs., Inc.*, 152 F.3d 1368, 1376 (Fed. Cir. 1998).  Steps a through d of claim 21 are reproduced below (steps e through i are omitted):

> 21. A method of operating a communications network to provide a network-based information service, the method comprising the following steps:
>
> step a - storing customer identities, respective customer-associated lists of identities of information items, hereinafter referred to as items, for which the respective associated customer has access rights, and identities of item-associated information sources from which the respective items can be retrieved;
>
> step b - receiving at the network a message requesting access to the information service and comprising at least a customer identity;
>
> step c - reading the contents of the received message;
>
> step d – retrieving from storage the list of information item identities associated with the received customer identity;

BT does not dispute that the patent never describes performing the steps in any order other than the order recited in the claims.  BT appears to concede that step a must precede step d and that steps b, c and d must occur in order.  *Id.* at 36-37.  Yet, BT contends that step a need not precede

b. *Id.* When the claims are considered logically, and consistently with the written description, it is clear that storage (step a) must occur before the customer requests access (step b).

Steps b-d require receiving the customer access request, reading it, and retrieving the stored customer-associated list. If the customer identity and the customer-associated list were not already stored before step b, then steps b-d, which depend on both items of information, could not be performed and would make no sense. For example, if the system first received and read the customer access request (steps b & c), it would make no sense to then store and retrieve the customer-associated list (steps a & d). There would be no need to store and then retrieve the list if the list were generated in response to a user access request as the system would already have the "customer-associated list." Thus, BT's argument is incorrect as it would replace the claims' express storing and retrieving requirements with a single generating step. Google Op. at 27 citing *Becton, Dickinson & Co. v. Tyco Healthcare Grp. LP*, 616 F.3d 1249, 1254-57 (Fed. Cir. 2010). Moreover, the claims require storing plural "customer-associated lists" and BT does not explain how that step could be performed for multiple customers in response to or following an access request message from a single customer. Thus, as in *Loral* and *Mantech*, the plain wording of the claim, logic and grammar indicate that step a must be performed before steps b-d.

The conclusion is no different for apparatus claims 14, 20, and 27 because these claims would make no sense if the customer-associated lists were not stored before the customer access request. BT Ans. at 37; Google Op. at 20-21 & 27-28. These claims all require that the control means or controller is "responsive to the provision … of a customer identity…" to "retrieve … a customer-associated list." *See, e.g.*, '079, 13:40-45 (claim 14). In order to retrieve such a list, in response to receiving the customer identity the "customer-associated lists" must be stored prior to provision of the customer identity. *See e.g.*, '079, 13:37-39 (claim 14).

2.      The '079 Accused Products Assemble a User Library on the Fly and Do Not Store or Retrieve Customer-Associated Lists from the Corpora



.   Neither the document nor the Ghosh testimony cited by BT as allegedly supporting the "storage" of customer-associated lists in the corpora (i.e., the backend storage) provide any information about the storage of any "lists," much less the plural customer-associated lists required by the '079 claims.  BT Ans. at 28 & 34 (citing Goog_BT_23497-502 and Ghosh Tr.).

To make up for its lack of evidence, BT states that a database management system ("DBMS") may meet the limitation.  BT Ans. at 39.  BT does not attempt to identify the alleged DBMS used by Google and BT has no evidence to show that this alleged DBMS stores "customer-associated lists."  *Id.*; Google Op. at 21-22.  Instead, BT contends that the precise manner by which information is stored "is not material."[8]  BT Ans. at 35 & 39.  Because BT cannot show that Google's backend systems or "corpora" store or retrieve the required lists, BT cannot show that the two separate storing and retrieving limitations are met.  *Exigent*, 442 F.3d at 1308.  Moreover, even under BT's DBMS theory, the limitations are not met because assembly

---

[8] BT's argument and reliance on Dr. Greenspun is inconsistent with Dr. Greenspun's own testimony (in connection with the '040 patent) that lists imply a certain structure or order.  Counihan Ex. C (Greenspun Tr.) at 293:19-294:9 & 298:6-21.

of the user library from a DBMS would take place after the user requests access. BT's speculation about Google's use of a DBMS in the corpora storage (or backend), which is unsupported by the evidence, does not raise a *genuine* dispute of material fact.

BT does not dispute that ███████████████████████████████████ ███████████████████████. Google Op. at 28 (citing Greenspun Reply ¶¶ 286-87); BT Ans. at 37-38.  As explained above (*see* Section III.B.I., *supra*), the claims require that the customer-associated lists be stored before the system receives the user access request message and BT's argument should be rejected.  BT's alternative argument ███████████████ ██████████████ meets the limitation because a user can navigate away from and then back to the assembled-on-the-fly list should also be rejected.  BT Ans. at 38.  The ████████ ████ was only initially populated with the assembled-on-the-fly list in response to a user request and it would be illogical to find that infringement springs forth simply because a user can navigate away from and then back to the assembled-on-the-fly list ██████████.

IV.   **Android OS Does Not Infringe The '309 Patent**

A.   █████████████████████████████████████████ ████████████████████████

BT does not dispute that:

- The '309 patent describes updating data relevant to service provision at least each time a user crosses a cell boundary.  BT Ans. at 41; Google Op. at 30-31 & 34.

- Each of the '309 named inventors testified that "on a point-by-point continuous basis" in the claims referred to when a user crosses a cell boundary.  *Id.* at 34-35.

- A user changes location in the network when she crosses a cell boundary.  *Id.* at 30-31.

- ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████

The only dispute is a matter of claim construction that concerns BT's misreading of the patent to argue that the claims, which recite "updating . . . on a point-by-point continuous basis as the user

changes location in the network," can be read to not require updates when the user changes location. D.I. 273-1, Padro Ex. C ("'309"), at 11:55-57 (claim 1).  Thus, although BT describes Android OS incorrectly in at least a few instances, the errors are not material to Google's motion.

                1.      Android Does Not Update Data "Continuously on a Point-by-Point Basis" and There are No Materials Facts in Dispute

██████████████████████████████████████████████████

██████████████████.  Although BT cites the testimony of Google's John Huang, none of the cited testimony indicates that Android OS updates data at least each time the user changes location in the network, including by crossing a cell boundary.  BT Ans. at 45.  BT provides no explanation for how updating data "within a few seconds" of a change in *connectivity status*, but not updating data as the user changes location in the network (e.g., if cellular connectivity is not lost when a user crosses a cell boundary), meets the claim limitation of updating data "continuously on a point-by-point basis as the user changes location in the network."  Such timed updates, which do not reflect a user changing location by crossing a cell boundary, do not meet the limitation because, as the inventors and BT's own expert agreed, this limitation refers to when users cross cell boundaries.  Google Op. at 33-35.

Although BT contends that it is a disputed issue of fact whether "Android OS controls the device modems," in the immediately preceding paragraph BT admits that "BT has *never accused* the device modems of having software agents nor has BT alleged that any data internal to the cellular modem or WiFi modem which may be updated meets this claim limitation."  BT Ans. at 48.  Given that the device modems and data within those modems are not accused, it is irrelevant whether Android OS controls the modem.  Google only emphasized this point in its opening brief due to the ambiguity of BT's infringement contentions.  Google Op. at 35.  No material facts are in dispute on this issue and summary judgment is proper.

2.    "Updating … On a Point-by-Point Continuous Basis" Requires Updating At Least When a User Crosses Cell Boundaries

BT misreads the claims and the Court's construction to conclude that "infringement can take place when data is updated continuously as the user moves within a cell without crossing a cell boundary." BT Ans. at 44-46 & 49. BT would read "as the user changes location within the network" to not require updating at least each time the user changes location in the network. BT Ans. at 47 & n.9. Where, as here, the claim requires something to happen "as the user changes location," it defies logic to assert that when the user changes location in the manner described by the patent (as acknowledged by the inventors and BT's expert), the step need not be performed and the system need not be capable of performing it. *See Renishaw plc v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1251 (Fed. Cir. 1998) (claim understood in view of the "patent disclosure of singular purpose").

BT's example, where data held by a cell agent is updated without a user changing cells because conditions in the cell have changed (BT Ans. at 41 citing '309, 6:12-14 and claims 7 & 23), is irrelevant because there is no indication how "updating . . . on a point-by-point continuous basis" is met or that the user has changed location in the network. As explained by Google, and not rebutted by BT, a user's location in the network most certainly changes as the user crosses a cell boundary. Google Op. at 30-31.

B.    **The "Responsive To" Limitation is Not Met Due to BT's Failure to Respond to Google's Argument And Clear Prosecution Disclaimer**

1.    BT Does Not Dispute that Certain Accused Android Features Do Not Meet the Requirement for "Separately Selectable Options"

BT does not dispute that the claims require "separately selectable options" for the plurality of services. *See* BT Ans. at 49-52; Google Op. at 38-40. Summary judgment is warranted because the accused Android features - service-specific pop-up windows, the data usage feature, and status icons - do not offer such options, which BT does not dispute. *Id.*

> 2. Prosecution Statements Defining the '309 Invention Require that Updated Data is Made Available Before a User Makes a Selection

BT identifies no material facts in dispute with respect to this limitation. Rather, BT argues that updated data need not be made available to the user before the user makes a selection because this sequence contradicts the "plain meaning" of the claim and would read out preferred embodiments. BT Ans. at 49-52. BT's argument, which runs afoul of clear prosecution disclaimers, is a question of claim construction appropriate for summary judgment. *Cooper Notification, Inc. v. Twitter, Inc. et al.*, 867 F. Supp. 2d 485, 490 (D. Del. 2012) *citing MyMail, Ltd. v. America Online, Inc.*, 476 F.3d 1372, 1378 (Fed. Cir. 2007).

BT ignores repeated prosecution statements, including one BT's expert described as an "important factor" in overcoming Hillis during reexamination and agreed constituted clear disclaimer of claim scope. Google Op. at 31-32 & 37-38. BT's excuse is that these statements related only to the preamble when data is allegedly not updated. BT Ans. at 43 & 52. Even if true, this is improper as BT distinguished art by relying on the preamble. *Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) ("clear reliance on the preamble to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation….") There was no indication that applicants distinguished Mahany based on the preamble. D.I. 273-4, Padro Ex. X, at Goog_BT_1023-24. In fact, the opposite is true as applicants distinguished Mahany by explaining "applicant's invention," which cannot possibly be limited to the preamble. *Id.* Concluding that the data in the preamble is not "updated" is illogical as this would mean that the user makes a selection based on out-of-date data.

BT argues that the "plain meaning" of the claims and the preferred embodiments in the specification are inconsistent with Google's interpretation. BT Ans. at 49-52. BT argues that the term "and" means that the claim does not require a sequence. *Id.* at 51-52. This would mean

that the function stated last in the claims - "responsive to selection" - should actually be performed first in the claim, which is both illogical and defies BT's clear disclaimer.

Contrary to BT's argument, the "Interactive Service Provision" scenario states that updated data are displayed to the user before the user's initial selection of a service. *See* '309, 9:3-11 and 9:50-56. BT mischaracterizes the patent by stating that "[o]nly if the price is above the user's preset price limit is the user prompted." BT Ans. at 42. BT cites no support for this proposition, which BT cannot do because there is none. Instead, the customer agent checks various settings, including the user's service subscriptions and price limits, and any business strategies that may exist, and then, with this information in-hand, the customer agent generates a list of service-price tuples and displays it to the user. '309, 9:3-11 and 9:50-56. BT's mapping to claim 18 is wrong because BT never shows user selection of a service or how the system is responsive thereto, and BT ignores that information is output to the user's display for the user to make a selection consistent with BT's prosecution disclaimer. BT Ans. at 50 citing '309, 9:3-7.

BT's reliance on the "Intelligent Data Services" scenario is also misplaced. BT Ans. at 42 & 51. This disclosure is irrelevant to the asserted claims because it assumes that the user has already made a selection (knowing that available data rates were acceptable at the time) and is receiving services when entering a new cell. '309, 10:3-10. The description that follows refers to temporary suspension and resumption of an already selected service and is embraced by dependent claims that add additional limitations. *See, e.g., id.* at 12:14-19 (claim 5). Even if this disclosure were relevant to the asserted claims, BT's prosecution disclaimer prevents BT from recapturing such subject matter. *UShip*, 714 F.3d at 1316; *N. Am. Container*, 415 F.3d at 1346.

## V.    Conclusion

Google's Motions for Summary Judgment of Noninfringement should be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *Paul Saindon*

_____

Jack B. Blumenfeld (#1014)
Paul Saindon (#5110)
Eleanor Tennyson (#5812)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
psaindon@mnat.com
etennyson@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

Dimitrios T. Drivas
Kevin X. McGann
Jeffrey J. Oelke
John P. Scheibeler
Robert E. Counihan
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY  10036
(212) 819-8200

December 20, 2013

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 27, 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 27, 2013, upon the following in the manner indicated:

Melanie K. Sharp, Esquire                              *VIA ELECTRONIC MAIL*
Monte T. Squire, Esquire
Robert M. Vrana, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for British Telecommunications plc*

James H. Shalek, Esquire                               *VIA ELECTRONIC MAIL*
Robert Mayer, Esquire
Joon Yoon, Esquire
Fabio Tarud, Esquire
Jonathan M. Sharret, Esquire
Elias Schilowitz, Esquire
Alan Federbush, Esquire
John C. Stellabotte, Esquire
Nolan M. Goldberg, Esquire
Ryan Pifer, Esquire
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY  10036-8299
*Attorneys for British Telecommunications plc*

Justin J. Daniels, Esquire                             *VIA ELECTRONIC MAIL*
Sean D. Whaley, Esquire
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110-2600
*Attorneys for British Telecommunications plc*

Michael W. McDermott, Esquire                    *VIA ELECTRONIC MAIL*
David B. Anthony, Esquire
BERGER HARRIS, LLC
One Commerce Center, 3rd Floor
1201 North Orange Street
Wilmington, DE  19801
*Attorneys for British Telecommunications plc*


                                        /s/ Paul Saindon
                                        Paul Saindon (#5110)