IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRITISH TELECOMMUNICATIONS PLC, | ) | |
| | ) | |
| Plaintiff, | ) | C. A. No.:  11-1249-LPS |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| GOOGLE INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF BRITISH TELECOMMUNICATIONS PLC'S
REPLY SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Melanie K. Sharp (No. 2501)
Monté T. Squire (No. 4764)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6681
msharp@ycst.com

PROSKAUER ROSE LLP
James H. Shalek
Baldassare Vinti
Nolan M. Goldberg
Joon R. Yoon
Fabio E. Tarud
Jonathan Sharret
Elias Schilowitz
Eleven Times Square
New York, NY  10036
(212) 969-3000

*Attorneys for British Telecommunications plc*

Dated:  January 31, 2014

# TABLE OF CONTENTS

**Page**

I.    '309 Patent:  There is no prosecution disclaimer of embodiments in which
      a user selection is made before the data is made available to the user ..............................1

II.   The '309 patent discloses multiple embodiments in which a user selection is
      made before the data is made available to the user ..........................................................2

III.  The '309 patent's "updating means" structure need not reside on the network .................3

IV.   '079 Patent:  "a reader for reading..." and "controller ... to send a message"
      are not means-plus function limitations...........................................................................4

V.    '079 Patent:  Under Google's construction, "a reader for reading..." and
      "controller ... to send a message" are not indefinite ........................................................5

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Epistar Corp. v. Int'l Trade Comm'n,*
 566 F.3d 1321 (Fed. Cir. 2009) ...................................................................................1

*In re Katz Interactive Call Processing Patent Litig.,*
 639 F.3d 1303 (Fed. Cir. 2011) ...................................................................................5

*Northern Telecom Ltd. v. Samsung Elecs. Co.,*
 215 F.3d 1281 (Fed. Cir. 2000) ...................................................................................1

*Omega Eng'g, Inc. v. Raytek Corp.,*
 334 F.3d 1314 (Fed. Cir. 2003) ...................................................................................1

*Softview LLC v. Apple Inc.,*
 No. 10-3892013, U.S. Dist. LEXIS 125893 (D. Del. Sept. 4, 2013) ........................5

*Welker Bearing co. v. PHD,*
 550 F.3d 1090 (Fed. Cir. 2008) ...................................................................................4

BT submits this brief in response to Google's Supp. Claim Construction Brief (D.I. 395).

I.   **'309 Patent: There is no prosecution disclaimer of embodiments in which a user selection is made before the data is made available to the user**

Google selects excerpts of the prosecution history out of context to argue that there has been a disclaimer of embodiments in which a user selection is made before the data is made available to the user. However a review of the prosecution history, including the prosecution history excerpts relied on by Google in context, confirms that there is no such disclaimer, let alone an unambiguous disclaimer,[1] of an embodiment that is clearly disclosed in the '309 patent itself.

During prosecution, Mahany was distinguished because "Mahany '536 merely deals with downloading data to a peripheral device by establishing a 'spontaneous LAN.' *It does not even mention a user*." Counihan Exh. C at 1024 (emphasis added). The prosecuting attorney noted that this differs from the '309 patent because the '309 patent requires a user selection to be made. *Id.* The order of operations noted in support of this argument is simply one exemplary embodiment in the '309 patent; it was not the distinction being made. Indeed, the excerpt cited by Google explicitly provides that the '309 invention "permits" that embodiment, *not* that it is the only embodiment. *Id.*[2] There is no clear disclaimer of the disclosed embodiments in which a user selection is made before the data is made available to the user.

The purported Hillis disclaimers are similarly mischaracterized. The reexam prosecution history distinguished Hillis on the basis that Hillis discloses embodiments with only a single ser-

---

[1] "A heavy presumption exists that claim terms carry their full ordinary and customary meaning, unless [a party] can show the patentee expressly relinquished claim scope." *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1334 (Fed. Cir. 2009). Prosecution disclaimer does not apply unless there is a clear and unmistakable disavowal of claim scope. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1326 (Fed. Cir. 2003). As a result, the Federal Circuit has "consistently rejected prosecution statements too vague or ambiguous to qualify as a disavowal of claim scope." *Id.* at 325.
[2] *See Northern Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1294 (Fed. Cir. 2000) ("describing the plasma as 'part' of the etching mechanism rather than as 'the' (or, perhaps, 'the only') etching mechanism" during prosecution history did not give rise to a disclaimer).

vice, and not the claimed "plurality of services." Counihan Exh. D at 863946.  In the excerpts Google cites regarding Hillis, the prosecuting attorney is using a disclosed embodiment, in which the user is presented with a plurality of services and then makes a selection, to demonstrate the single service/plurality of services distinction. There is no disclaimer of other embodiments.  The context makes this plain because the paragraphs before and after Google's Hillis excerpts concern the need for a plurality of services. *See id.* at 863946, 863948-49.

In addition, the distinction being made over Hillis concerns the preamble of the claims. The language in Google's own quote – *i.e.*, "the user can select one or more services to be provided" and "wherein data relevant to the plurality of services available to the user" – is from the preamble, not the disputed claim limitation. Thus, even assuming *arguendo* that there were a disclaimer of data being provided before selection (there is not), the disclaimer concerns the data available before the claimed method and apparatus is used, not the "updated data" that is in the claim limitation in dispute.

Google's disclaimer argument "that a selection must be made from a plurality of services made available to the user" rests on conflating types of services. The excerpts Google cites regarding Hillis discuss services regarding the type of communications network (*e.g.*, data, voice, etc.).  They are not content-specific services. The '309 patent specification makes this clear: "There will also be at least one customer, who has access to one or both of the networks and may require services such as telephone calls or data provision, and at least one service provider." 3:23-26.

## II.    The '309 patent discloses multiple embodiments in which a user selection is made before the data is made available to the user

As discussed in BT's Supplemental Claim Construction Brief (D.I. 394 at 4-5), the '309 patent discloses a series of embodiments in which a user selection is made before the data is

made available to the user, in addition to embodiments in which the data is made available to the user before the user makes a selection. Google's argument that its construction does not read out any embodiments because claim 5 covers the "Intelligent Data Services" embodiment (D.I. 395 at 4-5) fails. In fact, Google does not even argue that claim 5 covers the "Interactive Service Provision" embodiment or any of the other embodiments identified by BT. In addition, if, as Google argues, an embodiment is covered by dependent claim 5, then it must legally fall within the broader claim (claim 1) from which it depends.

**III.    The '309 patent's "updating means" structure need not reside on the network**

The Court already ruled that the figures in the '309 patent and accompanying discussions refer to exemplary preferred embodiments and are not limiting. *See, e.g.*, D.I. 235 at 5, citing Col. 2, lines 41-42 (rejecting Google's argument that the description of Figure 4 limits the claims in the context of construing "software agent"). Google now applies the same already-rejected narrowing theory to a different claim limitation, relying on a different figure. The rationale underlying Google's construction arguments remains essentially the same and the Court's grounds of rejection apply here with equal force. This issue has already been decided.

The parties agree on the function and that the structure is software agents. However, Google seeks to limit claim 1 to a preferred embodiment by arguing that the software agents must be only some of the disclosed agents (FNAs and CLAs) and that those agents (or at least some of them) must reside on the network. As explained in BT's Supplemental Claim Construction Brief (D.I. 394 at 7), the '309 patent is not so limited because it also discloses, for example, that the Customer Agents can perform this function.

Google's entire theory for this limitation rests on cherry-picking from Dr. Greenspun's testimony without context. Google cites Dr. Greenspun as saying "Yes, I think it is the case that at least some of the updated data would be on agents that I think would be very unlikely to be on

a user device." (D.I. 395 at 6-7.) But the next question and answer in the transcript (which Google omits from its brief) makes clear that Dr. Greenspun *does* believe the preferred embodiments are broad enough to put the agents outside the network:

> Q. You said "very unlikely," I just want to clarify something. Would you agree that the structures, to the extent there are structures disclosed in the '309 patent for the agents that would correspond to the updating means, it doesn't describe at least some of the agents that are required for that updating means as being on a user device?
> …
> A. ***No, the preferred embodiment leaves it up to the person of ordinary skill in the art where to put the agents,*** by and large; but I don't think a person of ordinary skill would elect to put, for example, the cell agents or the fixed network agent on one or more customer devices. I think it's perhaps technically possible to build a system that would be functional in that manner, but I don't think that would be the first or likely choice by a person of ordinary skill.[3]

Exh. A at 648:2-20. Thus, Google's only support for its construction in fact contradicts its construction.

### IV. '079 Patent: "a reader for reading…" and "controller … to send a message" are not means-plus function limitations

Google has no legal support for its position. Google's only cases for overcoming this presumption – *Welker Bearing* and *MIT* – construe the term "mechanism," which the Federal Circuit has explicitly held is similar to the word "means." *Welker Bearing co. v. PHD*, 550 F.3d 1090, 1096 (Fed. Cir. 2008). This is different than "reader" and "controller," which a POSITA would understand to be specific devices based on the intrinsic and extrinsic evidence. (D.I. 394 at 8-10). Without law or facts on its side, Google cannot overcome the legal presumption that the terms are not means-plus-function language.

Google counter-intuitively argues that because other claims are similar but use "means

---

[3] Much has been removed between the questions and answers presented on pages 6-7 of Google's brief, as is apparent from the fact that Google quotes three questions and answers but cites to nearly five pages of testimony (644:9-648:1). Exh. A to the Declaration of Robert M. Vrana, filed contemporaneously with this brief, is the entire transcript excerpt, including what Google did not submit.

for…" language, the presumptively non-means-plus-function claims at issue must likewise be means-plus-function. If anything, this similarity cuts against Google's argument because the drafter presumably intended the claims to differ in scope.

**V.  '079 Patent:  Under Google's construction, "a reader for reading…" and "controller … to send a message" are not indefinite**

Even assuming *arguendo* that these limitations are means-plus-function limitations, and even assuming *arguendo* that Google's constructions are correct, "a reader for reading…" and "controller … to send a message" are not indefinite. Google argues that "[w]here, as here, the disclosed structure is merely a general purpose computer (or processor), the specification must disclose an algorithm or description of the steps and operations…" and cites to the *WMS Gaming* and *Aristocrat* cases in support. (D.I. 395 at 8.) This is outdated law. Since those cases, the Federal Circuit has explicitly held that where, as here, simple claims functions like "processing," "receiving," and "storing" can be achieved by a general purpose computer without special programming, it is "not necessary to disclose more structure than the general purpose processor that performs those function." *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1315-1316 (Fed. Cir. 2011) (reversing lower court's holding that claims were indefinite); *see also Softview LLC v. Apple Inc.*, No. 10-3892013, U.S. Dist. LEXIS 125893, at *34-35 (D. Del. Sept. 4, 2013) (citing *In re Katz* and holding that "[n]either the claim language nor specification indicate that any special programming is required. It follows that an algorithm is not required."). Here, the claims provide "a reader for reading…" and a "controller…to send a message." As admitted by Google's expert, these can both be achieved by a general purpose processor without special programming. *See, e.g.*, Exh. B at 19 ("a POSITA would not have required such a detailed disclosure in order to create software that practiced the elements of the Asserted Claims."). The claims are therefore not indefinite even under Google's incorrect proposed constructions.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert M. Vrana*

Melanie K. Sharp (No. 2501)
Monté T. Squire (No. 4764)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6681
msharp@ycst.com

PROSKAUER ROSE LLP
James H. Shalek
Baldassare Vinti
Nolan M. Goldberg
Joon R. Yoon
Fabio E. Tarud
Jonathan Sharret
Elias Schilowitz
Eleven Times Square
New York, NY  10036
(212) 969-3000

Dated:  January 31, 2014            *Attorneys for British Telecommunications plc*