IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRITISH TELECOMMUNICATIONS PLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 11-1249 (LPS) |
| | ) | |
| GOOGLE INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT GOOGLE INC.'S ANSWERING
SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Paul Saindon (#5110)
Eleanor Tennyson (#5812)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
psaindon@mnat.com
etennyson@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

Dimitrios T. Drivas
Kevin X. McGann
Jeffrey J. Oelke
John P. Scheibeler
Robert E. Counihan
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY  10036
(212) 819-8200

January 31, 2014

## TABLE OF CONTENTS

I.     Google's Proposed Constructions are Not Untimely .........................................................1

II.    '309 patent....................................................................................................................2

       A.     Updated Data Must be Made Available To the User Before the User
              Selects A Service and the User Must be Able to Select from a Plurality of
              Services ............................................................................................................2

       B.     The Patent Only Describes Structure for the Updating Means that Resides
              Within the Network...........................................................................................3

III.   '079 Patent Claim Terms "a reader for reading" And "controller" are Means-Plus-
       Function terms..................................................................................................................4

## TABLE OF AUTHORITIES

**Cases**

*Aristocrat Techs. Austl. Pty. Ltd. v. Int'l Game Tech.*,
    521 F.3d 1328 (Fed. Cir. 2008)..................................................................................5

*Cooper Notification, Inc. v. Twitter, Inc.*,
    867 F. Supp. 2d 485 (D. Del. 2012) ........................................................................1

*Kemco Sales, Inc. v. Control Papers Co.*,
    208 F.3d 1352 (Fed. Cir. 2000)..................................................................................3

*Mas-Hamilton Grp. v. LaGard, Inc.*,
    156 F.3d 1206 (Fed. Cir. 1998)..............................................................................4, 5

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)..................................................................................4

*Uship Intellectual Props., LLC v. United States*,
    714 F.3d 1311 (Fed. Cir. 2013)..................................................................................2

I.        **Google's Proposed Constructions are Not Untimely**

BT spends much of its brief arguing that Google's positions on claim construction are a surprise.  BT's claims of surprise, however, are hollow.  Google's construction of the "and responsive to" term of the '309 patent is based ***directly on BT's own expert's report that it served on September 20, 2013*** and which BT itself acknowledges (D.I. 394 at n.6) was addressed in the parties' summary judgment briefing filed more than two months ago.  D.I. 270 (Google SJ Br.) at 31-32 & 37-40.  With respect to the "reader for reading" and "controller" terms in claim 27 of the '079 patent, BT has been on notice of Google's contention that these are means-plus-function claims for months.  For example, Dr. Greenspun's report specifically cross-referenced his arguments on these terms for the "means" terms in claims 14 and 20.  Padro Ex. A at 23-24.  Dr. Walker's rebuttal report specifically responded to Dr. Greenspun's reports on these terms, arguing that they did not identify any corresponding structure.  Padro Ex. B at ¶¶ 94-96.  BT's complaint that Google changed its construction for the "updating means" ignores that Google has focused the dispute on the first sentence of its existing construction, as that aspect is dispositive.  Thus, Google simply has narrowed the scope of the dispute.

BT's remaining complaint is that Google somehow waived its right to argue for further claim construction. Google, however, has followed the Court's direction when it limited the *Markman* hearing terms and advised that any further constructions would be addressed no later than in connection with jury instructions.  D.I. 96.  In short, Google's arguments are timely, not a "surprise" and have been pruned to dispositive issues.  Google presents a fundamental dispute over the meaning of a claim term, "which the Court rather than a jury must resolve."  *Cooper Notification, Inc. v. Twitter, Inc.*, 867 F. Supp. 2d 485, 491 (D. Del. 2012).

## II.     '309 patent

### A.     Updated Data Must be Made Available To the User Before the User Selects A Service and the User Must be Able to Select from a Plurality of Services

BT's argument that Google's construction would read out preferred embodiments ignores the well-established law that "prosecution disclaimer could result in [an] embodiment not being covered by the claims." *Uship Intellectual Props., LLC v. United States*, 714 F.3d 1311, 1316 (Fed. Cir. 2013).   Google's construction of the "and responsive to" limitation mirrors the requirements expressed by BT's own expert based on what he himself characterized as (1) a "key point that distinguishes the claims of the '309 patent" (2) a "point of distinction [that] was an important factor in reexamination" and (3) an "express[ ] disclaimer."  D.I. 397 Ex. A at ¶¶ 297-301 & Ex. B at 628:3-9; D.I. 395 at 1-3.  BT made these distinctions not once, but three times, and these statements were directed to how their alleged *invention* was different from the prior art.  D.I. 395 at 2-3.  BT's disclaimer of a system or method where (a) the user selection was made before the user was provided with updated data or (b) the user was not permitted to select a service from a plurality of services was clear and unmistakable.  BT fails to address (1) why its repeated arguments during prosecution and reexamination, which its own expert relies upon as a key distinction over the prior art, are not a clear and unmistakable disclaimer, (2) that, in the face of such a disclaimer, exclusion of a preferred embodiment is entirely proper and (3) that the claims require the user to be able to select a service from a plurality of services.  D.I. 394 at 4-5.

In any event, Google's construction does not exclude either of the embodiments BT contends are excluded.   Notwithstanding BT's statement (D.I. 394 at 4), there is no "pre-select[ion]" of services in the Interactive Service Provision scenario.  BT conveniently cuts its citation off at line 7 of column 9, just before the explanation that, once the available services are evaluated against user settings, the customer agent "offers a list of service-price tuples to the

customer's phone unit." '309, 9:3-11.  The user has not made a selection yet; otherwise, it would make no sense to present the options to the user.  The next passage BT cites (9:18-25) refers to services that are "extant" when crossing a cell boundary, which means that the user made a selection of that service when the user received the "updated" data as described at 9:3-11. BT's own claim chart does not show that selection has occurred before the updated data are provided. Google '309 SJ Slide 28.  BT's reliance on "Intelligent Data Services" fares no better as it relates to the possible suspension and resumption of a service that was selected, which is specifically covered by claim 5, which recites the additional limitations of a means to store data when bandwidth is not available and later download data when bandwidth is available. '309, 12:10-19.

**B.     The Patent Only Describes Structure for the Updating Means that Resides Within the Network**

BT argues that any type of agents (i.e., network agents or client agents) can be the necessary structure and takes issue with Google's identification of the network management agents (FNAs and CLAs) as the minimum requirements for the updating means.  Yet, the very support cited by BT as support for its construction (i.e., 4:1-13 of the '309 patent), specifically describes the **network** management agents.  The next passage BT cites (4:56-60) describes that when a user enters a new cell, the *network* sends a message to the "resource controller" on the *cell* agent (which is then passed to the customer agent).  The '309 patent further explains that the *cell agent* (itself not a client agent) notifies the *customer agent* when the customer enters or leaves a cell. '309, 6:15-17.  Thus, the customer agent, if it is involved, as BT argues (D.I. 394 at 7), only becomes involved **after** it receives this information from the cell or other network agents.  As such, the minimum structure that is required to perform the updating as the user changes location within the network must include the network management agents that reside in or on the network, not a user device. *See Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d

1352, 1361-63 (Fed. Cir. 2000) (affirming district court's construction that corresponding structure had to include all elements of the claimed function).

### III.   '079 Patent Claim Terms "a reader for reading" and "controller" Are Means-Plus-Function Terms

A term is a means-plus-function term if the claim itself otherwise fails to provide sufficient structure. *See Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1213-15 (Fed. Cir. 1998). BT's own brief demonstrates that the presumption that the terms "reader for reading" or "controller . . . to send" are not means-plus-function limitations is overcome because the claims themselves do not recite sufficient structure for performing the claimed function.

BT posits that "reader" is a well-known term of art to a POSITA and cites a dictionary definition of reader to suggest that a reader is a device that converts information into a format recognized by a machine as input.[1] Even if this were a structure, **such a structure does not perform the function recited in the claims** of "reading a message received at the signaller and providing at least a customer identity and an alias for a document extracted therefrom." First, the information sent in claim 27 is already in a form that is readable by a machine because it was sent by a machine. BT's definition apparently refers to something like a card reader that reads information and converts it to a form readable by a device. *See* D.I. 396 Ex. C; Padro Ex. C. This is not the recited function. The recited function requires reading a message sent by a machine and extracting certain information from that message, not merely converting something into machine-readable form. Thus, BT's generic "reader" cannot be such a structure for the

---

[1]   The definitions BT cited are not from 1995 (D.I. 396 Exs. C-D) **but from 2005** as can be ascertained from reviewing copyright pages of Plaintiff's Exs. C & D. A 2005 definition sheds no light on what meaning the terms would have to a "person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.,* 415 F.3d 1303, 1313 (Fed. Cir. 2005).

purpose of arguing that the term is not subject to means-plus-function treatment.  As a means-plus-function term, however, the specification does not provide any alterative structure beyond that identified in Google's proposed construction (i.e., a service node).  "Service node" is not otherwise described nor a term of art, and as the only passages that relate to the claimed function, merely repeat the function without providing any structure or describing the steps and operations used by the admittedly generic service node.  *See* '079, 6:26-31, 47-49; D.I. 397 Ex. G at 96:25-98:18.  Thus, the "reader for reading" is a means-plus-function term that, absent disclosure of supporting structure in the specification, is indefinite.  *Aristocrat Techs. Austl. Pty. Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1336-38 (Fed. Cir. 2008).

BT's argument regarding the controller in claim 27 is similarly unavailing.[2]  BT admits in the context of this claim that "controller" is nothing more than "control means" which is nothing more than a processor.  D.I. 394 at 10 (citing '079, 5:1-2); *see Mas-Hamilton*, 156 F.3d at 1213-15. As cases like *Aristocrat* (interpreting "control means") make clear, however, a processor is not sufficient structure absent a description of the steps and operations (i.e., programming) that the processor uses to accomplish the recited function because a generic processor is indistinguishable from another except by its programming.  *Aristocrat*, 521 F.3d at 1332-33, 1336-38.  Thus, if as BT contends, the controller in claim 27 is simply a processor, that does not, as a matter of law, specify sufficient structure. Since the specification provides no further guidance regarding the steps and operations the processor performs to accomplish the recited functions other than by repeating the function, the claim is invalid as indefinite.  *Id.* at 1334 ("Simply describ[ing] the function to be performed" does not disclose sufficient structure.).

---

[2]  BT cites to *911EP* which is not controlling or persuasive and conflicts with the *Aristocrat* and *Ergo* precedent.  D.I. 394 at 10 n.8.  The remaining cases BT cites are inapplicable as they do not address a dispute over means-plus-function treatment. *Id.*

- 6 -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Paul Saindon*

Jack B. Blumenfeld (#1014)
Paul Saindon (#5110)
Eleanor Tennyson (#5812)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
psaindon@mnat.com
etennyson@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

Dimitrios T. Drivas
Kevin X. McGann
Jeffrey J. Oelke
John P. Scheibeler
Robert E. Counihan
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY  10036
(212) 819-8200

January 31, 2014
7971617

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 31, 2014, upon the following in the manner indicated:

Melanie K. Sharp, Esquire                                  *VIA ELECTRONIC MAIL*
Monte T. Squire, Esquire
Robert M. Vrana, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for British Telecommunications plc*

James H. Shalek, Esquire                                   *VIA ELECTRONIC MAIL*
Robert Mayer, Esquire
Joon Yoon, Esquire
Fabio Tarud, Esquire
Jonathan M. Sharret, Esquire
Elias Schilowitz, Esquire
Alan Federbush, Esquire
John C. Stellabotte, Esquire
Nolan M. Goldberg, Esquire
Ryan Pifer, Esquire
Baldassare Vinti, Esquire
Gregg M. Mashberg, Esquire
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY  10036-8299
*Attorneys for British Telecommunications plc*

Justin J. Daniels, Esquire                                 *VIA ELECTRONIC MAIL*
Sean D. Whaley, Esquire
Steven M. Bauer, Esquire
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110-2600
*Attorneys for British Telecommunications plc*

- 2 -

Michael W. McDermott, Esquire
David B. Anthony, Esquire
BERGER HARRIS, LLC
One Commerce Center, 3rd Floor
1201 North Orange Street
Wilmington, DE  19801
*Attorneys for British Telecommunications plc*

*VIA ELECTRONIC MAIL*

*/s/ Paul Saindon*
Paul Saindon (#5110)