IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRITISH TELECOMMUNICATIONS PLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C. A. No.: 11-1249 (LPS) |
| v. ) | |
| ) | |
| GOOGLE INC., ) | REDACTED - PUBLIC VERSION |
| ) | |
| Defendant. ) | |
| ) | |

**DECLARATION OF ROBERT M. VRANA IN SUPPORT OF
PLAINTIFF BRITISH TELECOMMUNICATIONS PLC'S
REPLY SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

I, Robert M. Vrana, hereby declare as follows:

1. I am a member of the bar of the State of Delaware.

2. I am an associate in the firm Young Conaway Stargatt & Taylor, LLP, counsel for Plaintiff British Telecommunications plc ("BT") in the above-captioned case. I submit this Declaration in support of BT's Supplemental Claim Construction Brief.

3. Attached as **Exhibit A** is a true and correct copy of an excerpt of the Transcript of the Deposition of Philip Greenspun, conducted on October 27, 2013.

4. Attached as **Exhibit B** is a true and correct copy of an excerpt of the Expert Report of Alexander B. Trevor Regarding Invalidity of U.S. Patent No. 6,578,079.

In accordance with 29 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 31, 2014.

/s/ Robert M. Vrana
Robert M. Vrana (No. 5666)

01:14958214.1

Exhibit A is redacted in its entirety

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRITISH TELECOMMUNICATIONS plc,<br><br>    Plaintiff,<br><br>  -against-<br><br>GOOGLE INC.,<br><br>    Defendant. | C.A. No. 11-1249 (LPS) |

### EXPERT REPORT OF ALEXANDER B. TREVOR
### REGARDING INVALIDITY OF U.S. PATENT NO. 6,578,079

Prestel itself was a pre-Internet online information service that provided users with messaging, reservations, news and access to multiple information providers. Subscribers were identified by a terminal identifier and a password.[24]

> The normal Prestel user, on pressing the Prestel button on his keypad will be routed through the Public Switched Telephone Network (PSTN) to the local IRC and charged as if making a local telephone call. Security of access by the user is controlled by use of a unique terminal number (the terminal identifier) in each Prestel set. This number is matched with a file of valid users held on each IRC computer. Additional security can be provided by the user creating his own 'personal password.' Having successfully accessed the system, the user's terminal displays the 'Welcome to Prestel' frame.[25]

52. Surely at the time the '079 was filed, BT had knowledge of Prestel. Developed by the British Post Office, it was one of BT's products starting in 1979.[26] Since Prestel contained at least some of the elements of the '079 claims as I point out in paragraph 51 and illustrated in the screen shots below, it is surprising that Prestel was not disclosed during the prosecution of the '079 patent.[27]



---

[24] Prestel. The Technology., 1980, Prestel Headquarters, London EC4B 4PP ("Prestel"), p. 5
[25] Id.
[26] British Telecommunications plc Offer for Sale of Ordinary Shares by Kleinwort, Benson Limited, 1984, p. 12
[27] "One Thousandth of Prestel," Prestel Booklet Distributed by the British Post Office at Viewdata '80, British Telecommunications PLC, Wembley, England, 1980



## IX. Scope and Content of Prior Art

53. In my opinion, each prior art reference identified in this section provides sufficient detail to enable a POSITA to practice the elements of the Asserted Claims to which the prior art reference applies, without undue experimentation. As explained in detail in Section VIII of my report ("Background of the Technology") and in the claim charts appearing in Appendix C, the concepts and technological underpinnings behind each Asserted Claim were already firmly in place and widely used well before the time of the alleged invention of the '079 patent.

54. Network-based information systems providing access to the information items from multiple information sources by maintaining the lists of customer-associated items and their locations, as well as technical information describing these technologies, were all readily available to a POSITA by the time of the alleged invention of the '079 patent. While detailed technical descriptions of these technologies were publicly available by the time of the alleged invention of the '079 patent, a POSITA would not have required such a detailed disclosure in order to create software that practiced the elements of the Asserted Claims. In my opinion, the

- 20 -

detail provided in the prior art identified in this section was sufficient for a POSITA to create such software.

### A. CompuServe

55. From 1969 until 1980 CompuServe's primary business was providing remote computing services for corporations. These so-called "timesharing services" included the use of server based applications as well as the user of centralized computer resources, analogous to Web based services today.

56. In 1980, CompuServe introduced an information service for personal computer users (primarily consumers) called the CompuServe Information Service ("CIS"). Initially CompuServe offered only an ASCII text-based service, but by late 1989 CompuServe introduced client software that included a graphical user interface and a sophisticated application layer protocol called Host Micro Interface (HMI Protocol). HMI required the use of compatible client software. CompuServe developed a series of HMI clients called the CompuServe Information Manager ("CIM") for several platforms, including DOS, Windows ("WINCIM"), Apple Macintosh, and others. CIM provided a browser-like experience, and evolved over time with many released versions.

57. CompuServe developed and used its own packet switched data network WAN (Wide Area Network), starting in 1974. CompuServe sold use of this network to other companies so they could access their servers from afar, just as corporations today access their servers over the Internet. CompuServe called these connections to non-CompuServe computers "foreign host gateways[28]." CIS used foreign host gateways to provide access to information sources that did not reside on CompuServe computers. CIS was also accessible via public X.25 WAN networks,

---

[28] Online Today, p. 11

## XIV. Supplementation

96. I may supplement this report if I become aware of additional pertinent information or in response to the reports of others. Moreover, I may comment on or testify in response to the testimony of other witnesses, including witnesses who testify on behalf of plaintiffs.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 6 th day of August, 2013.

_____
Alexander B. Trevor